UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ X
                               :

UNI-SYSTEMS, LLC,              :

          Plaintiff,         :

      -against-        :

UNITED STATES TENNIS     :      CIVIL ACTION NO. _____
ASSOCIATION, INC., ROSSETTI INC.,  :
HUNT CONSTRUCTION GROUP, INC., :     **COMPLAINT**
HARDESTY & HANOVER, LLC,   :
HARDESTY & HANOVER LLP,    :     **DEMAND FOR JURY TRIAL**
MORGAN ENGINEERING SYSTEMS, :
INC., and GEIGER ENGINEERS, P.C.  :

       Defendants.    :

                               :

                               :
------------------------------------------------------ X

## <u>INTRODUCTION</u>

For nearly two decades, Uni-Systems, LLC ("Uni-Systems") has been the leading designer of retractable roof systems in the United States, having designed and implemented retractable roof systems for major stadiums throughout the country. Uni-Systems owns a portfolio of United States patents and employs confidential and proprietary software, machining, material selection, and assembly procedures that constitute Uni-Systems' trade secrets. This intellectual property reflects Uni-Systems' position as the industry leader in retractable roof innovation.

Around 2003, Hunt Construction Group, Inc. ("Hunt") engaged Uni-Systems to design, fabricate, and install the retractable roof at the Arizona Cardinals Stadium. The Arizona

Cardinals also hired Uni-Systems to provide maintenance and repairs to the retractable roof once operational.  In connection with this project and under guarantees of strict confidentiality, Uni-Systems provided the Arizona Cardinals with its confidential and proprietary trade secret information for retractable roof maintenance.  Determined to establish a competitor against Uni-Systems for retractable roof projects, Hunt conspired with Hardesty & Hanover, LLC and Hardesty & Hanover, LLP (collectively, "Hardesty & Hanover") to take over the maintenance of the roof and in so doing, obtain access to and steal Uni-Systems' trade secret retractable roof technology.  To implement this plan, Hardesty & Hanover successfully offered to the Arizona Cardinals to handle the maintenance of the retractable roof at a financial loss, stole Uni-Systems' trade secrets while acting as maintenance provider, and used Uni-Systems' trade secreted innovations to develop its own competitive offerings.

In 2011, Uni-Systems learned that the United States Tennis Association ("USTA") planned to construct a retractable roof over Arthur Ashe Stadium in Flushing, New York (the "Ashe Retractable Roof"), which was to be designed by Defendant Rossetti Inc. ("Rossetti") and built by Defendant Hunt.  Defendant Hardesty & Hanover ultimately won the design work for the Ashe Retractable Roof, utilizing Uni-Systems' trade secrets it had taken from the Arizona Cardinals and infringing on Uni-Systems' patented technology.  In designing, engineering, building, utilizing and supplying mechanisms for the Ashe Retractable Roof, all Defendants infringe Uni-Systems' patents.  Although Uni-Systems notified Defendants of its claims for patent infringement and misappropriation of trade secrets via letter in May of 2016, Defendants ignored requests to meet to discuss a resolution of the dispute, necessitating this litigation.

Plaintiff Uni-Systems, LLC hereby files this Complaint for Patent Infringement, Trade Secrets Misappropriation, and Unfair Competition against Defendants USTA, Rossetti, Hunt,

Hardesty & Hanover, Morgan Engineering Systems, Inc. ("Morgan"), and Geiger Engineers, P.C. ("Geiger") (collectively, "Defendants").  Uni-Systems further alleges as follows:

## THE PARTIES

1.      Plaintiff Uni-Systems, LLC ("Uni-Systems" or "Plaintiff") is a Minnesota Limited Liability Company with its headquarters at 4600 Lake Road, Minneapolis, Minnesota. Cyril Silberman is the sole member of Uni-Systems and has been a resident of the State of Florida at least since 2008.

2.      Defendant United States Tennis Association, Inc. ("USTA") is a not-for-profit corporation incorporated under the laws of the state of New York with its principal place of business at 70 West Red Oak Lane, White Plains, New York, New York 10604.  USTA Owns and operates the Arthur Ashe Stadium at Flushing Meadows, New York, in this judicial district.

3.      Defendant Rossetti Inc. ("Rossetti") is a corporation incorporated under the laws of the state of Michigan with its principal place of business at 160 West Fort Street, Detroit, Michigan 48226.

4.      Defendant Hunt Construction Group, Inc. ("Hunt") is a corporation incorporated under the laws of the state of Indiana with its principal place of business at 2450 South Tibbs Avenue, Indianapolis, Indiana 46241.

5.      Defendant Hardesty & Hanover, LLC is a Delaware limited liability company, with its headquarters at 1501 Broadway, New York, New York 10036.  Defendant Hardesty & Hanover, LLP is a New York limited liability partnership with its headquarters at 1501 Broadway, New York, New York 10036.  Both entities are collectively referred to as "Hardesty & Hanover."

6.     Defendant Morgan Engineering Systems, Inc. ("Morgan") is a corporation incorporated under the laws of the state of Delaware with its principal place of business at 1049 South Mahoning Avenue, Alliance, Ohio 44601.

7.     Defendant Geiger Engineers, P.C. ("Geiger") is a corporation incorporated under the laws of the state of New York with its principal place of business at 2 Executive Boulevard, Suite 309, Suffern, New York 10901.

## JURISDICTION AND VENUE

8.     This action involves claims for violation of 35 U.S.C. §§ 1 *et seq*. and 18 U.S.C. § 1836 *et seq*.  Accordingly, this action arises under the laws of the United States and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because such claims are so related to the federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.     This Court has personal jurisdiction over Defendants USTA, Hardesty & Hanover, and Geiger because they are domiciled in the state of New York.  This Court has personal jurisdiction over all Defendants because, on information and belief, Defendants transact business and have continuous and systematic contacts in this district, maintain an ongoing presence within this district, have purposefully availed themselves of the privileges and benefits of the laws of the state of New York, and have engaged in acts, including patent infringement, within New York that have caused injury to Uni-Systems in New York.

10.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(b) because a substantial part of the events or omissions giving rise to the claims occurred in this

judicial district, Defendants are subject to personal jurisdiction in this judicial district, and Defendants have committed acts of infringement in this judicial district.

## FACTUAL BACKGROUND

### A.     Uni-Systems Company Background

#### 1.     Uni-Systems Is The Leading Designer of Retractable Roof Systems

11.     Founded in 1968, Uni-Systems is a global leader in the design, fabrication, installation, and management of kinetic architecture.  It creates transformative, mechanized structures that change with climate, need or purpose.  Originally established to develop moveable architecture in the aerospace industry, Uni-Systems expanded into the military, construction, entertainment, and sports industries.  From movable gates to airline hangar doors and large-body docking equipment, retractable roofs and moving walls, Uni-Systems designs the mechanization systems that permit large structures to move.  Indeed, the very term "kinetic architecture" was coined by Uni-Systems.

12.     Uni-Systems is the leading designer of retractable roof systems in the United States.  It has designed, fabricated, and installed the most prominent retractable roofs over the past decade, including those at Minute Maid Ballpark and Reliant Stadium in Houston, Texas; Marlins Ballpark in Miami, Florida; Lucas Oil Stadium in Indianapolis, Indiana; Cowboys Stadium near Dallas, Texas; and University of Phoenix (Cardinals) Stadium in Glendale, Arizona.

#### 2.     Uni-Systems' Patents-In-Suit Reflect Retractable Roof Innovation

13.     Uni-Systems' intellectual property reflects its position as the industry leader in retractable roof innovation.  Uni-Systems owns a portfolio of pioneering United States patents in this field, including but not limited to United States Patent Nos. 6,789,360 and 7,594,360.

14.     On September 14, 2004, U.S. Patent No. 6,789,360 ("the Retention Mechanism patent"), entitled "*Retractable Roof System for Stadium*," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the Retention Mechanism patent is attached as Exhibit A to this Complaint.

15.     Uni-Systems is the owner, by assignment, of all rights, title, and interest in the Retention Mechanism patent.

16.     Uni-Systems developed the Retention Mechanism patent, including its disclosure of the tied arch structural system, based on its recognition of the need for an improved stadium roof design that was lighter in weight, less bulky, and less likely to interfere with the view of spectators within the stadium than those allowed by conventional stadium roof designs.

17.     On September 29, 2009, U.S. Patent No. 7,594,360 ("the Lateral Release patent"), entitled "*Lateral Release Mechanism for Movable Roof Panels*," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the Lateral Release patent is attached as Exhibit B to this Complaint.

18.     Uni-Systems is the owner, by assignment, of all rights, title and interest in the Lateral Release patent.

19.     Uni-Systems developed the Lateral Release patent based on its recognition of the need for an improved design for a retractable roof and transport mechanism that was compact, lightweight, reduced the structural requirements for the supporting structure, and that was capable of maintaining its stability and alignment both during normal use as well as in extreme conditions more capably than comparable mechanisms previously known.

20.    The Retention Mechanism patent and the Lateral Release patent (collectively, "the Patents-in-Suit") are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

**3.        Uni-Systems' Retractable Roof Operation Software and Know-how Constitute Uni-Systems Trade Secrets**

21.    In addition to Uni-Systems' patents in this field, Uni-Systems also employs confidential and proprietary software, machining, material selection and assembly procedures. The software is used to implement the operation of bogies (i.e., the vehicles which open and close a retractable roof).  The software innovations include a variety of operation instructions including a safety component that controls the motion profile of the bogies to ensure the roof is opened and closed safely.  Although not patented, this software is highly valuable to the company and its customers because of its confidential nature.  The science, research and testing embodied in Uni-Systems' machining, material selection and assembly procedures are among the reasons Uni-Systems' devices comprising its stadium retractable roofs are reliable, long-lasting and competitively priced.  All of these elements are confidential and proprietary, and constitute Uni-Systems' trade secrets.

22.    These trade secrets were developed over the course of many years and at great expense through rigorous and repeated prototyping and testing of various designs and assembly procedures for numerous devices and components that comprise a stadium retractable roof.  The result is that Uni-Systems has consistently designed and built the most reliable stadium retractable roofs in the world.

23.    As is well known to those working in the construction industry, the industry is divided into standard divisions—historically there were sixteen, today there are fifty—for organizing and standardizing information and specifications for building construction projects.

With its trade secrets, Uni-Systems has historically been able to market itself as a professional service provider that is outside the purview of the standard architectural divisions for complex building construction, and as a builder of structures that are not subject to commoditization or standard specification.  Unlike the standard architectural divisions, there have been until now no standard specifications for the construction of stadium retractable roofs.  The reason is Uni-Systems' decades-long maintenance of its stadium retractable roof construction-related trade secrets.

24.     By maintaining aspects of its technology as trade secret, Uni-Systems has not had to operate like subcontractors providing a commoditized service vis-a-vis the architects or general contractors.  Rather than be subjected to the procedure where a subcontractor must submit a free design and then bid to build according to the design, Uni-Systems with its proprietary technology and specialized know-how submits a simplified performance design, the purpose of which is to demonstrate to potential customers Uni-Systems' capabilities and expertise to handle a stadium roof project.  The architect or the general contractor's decision is therefore about whether or not it wants or needs to use Uni-Systems' technology and know-how, rather than essentially which subcontractor offers the lowest price.  Uni-Systems' proprietary technology has allowed Uni-Systems to enjoy a brand and reputation for excellence in kinetic architecture unlike any other construction company in the world.

25.     Because Uni-Systems' trade secrets are so commercially valuable, Uni-Systems has taken reasonable and careful measures to protect and maintain them.  This includes, among other things, requiring that its customers and clients enter into non-disclosure agreements or other confidentiality agreements prior to being given access to the software.  These provisions

require strict confidence and prohibit disclosure or use of Uni-Systems' trade secrets without the consent of Uni-Systems.

26.     Uni-Systems also takes steps internally to protect its trade secrets. As an initial matter, Uni-Systems' trade secret information has been shared strictly on a need-to-know basis and generally was neither maintained on recording media nor aggregated in a repository.  This policy insured that no specific piece of information would fully embody a trade secret that could be compromised.  Further, Uni-Systems maintains employee handbooks that set forth Uni-Systems' expectation that every employee act in a manner to prevent the disclosure of confidential information.  Indeed, these handbooks impose express restrictions on the disclosure of all of Uni-Systems' confidential information, including, for example, its intellectual property, computer software, manuals, and unique methods.  And, as a small company, Uni-Systems' standard course of business conduct created an environment in which employees understood and continue to understand their duty of confidentiality to the company, which information was and is considered proprietary and confidential, and the consequences if that duty is ever violated.

27.     Uni-Systems has spent and continues to spend significant amounts of time and money in developing, improving, and protecting its confidential, proprietary, and trade secret software and confidential documents concerning tooling, assembly procedures, testing procedures as well as training manuals and other related materials.  For this reason, Uni-Systems also has never shared this information with a competitor and requires, through its confidentiality agreements with its customers, that any such information will not be shared unless Uni-Systems expressly authorizes its disclosure.

28.     Indeed, any such unauthorized disclosure would provide a competitor with an unfair competitive advantage based on its "free riding" on Uni-Systems research and

development.  It would allow that competitor to gain the benefit of Uni-Systems' valuable confidential information without having to expend any of the extensive and expensive research and development that Uni-Systems undertook to create those innovations.  Any such competitor could therefore compete against Uni-Systems using Uni-Systems' own data and analysis tools and under-cut Uni-Systems' prices while at the same time offering the same or substantially the same services and products to those offered by Uni-Systems.

29.     Uni-Systems' trade secrets have independent economic value derived from the fact that they are not generally known nor readily ascertainable within the industry through lawful means.  Uni-Systems has made reasonable efforts to ensure the secrecy of its trade secrets, which merit legal protection from unauthorized disclosure, misappropriation, dissemination, and/or use.

### 4.     Hunt and Hardesty & Hanover

30.     On information and belief, after years of working with Uni-Systems on stadium retractable roof projects, Defendant Hunt resolved to develop a competitor against Uni-Systems for retractable roof design.  On information and belief, Defendant Hunt and Hardesty & Hanover conspired to obtain (on a below-cost basis) the contract to maintain the retractable roof at the Arizona Cardinals Stadium which Uni-Systems had designed, developed, and maintained, and thereby steal Uni-Systems' highly valuable trade secrets.

### B.     Arizona Cardinals Stadium Retractable Roof

### 1.     Uni-Systems Designed the Arizona Cardinals Stadium Retractable Roof And Maintained Its Trade Secrets In Strict Confidence In Connection With The Project

31.     The Arizona Sports and Tourism Authority ("Owner"), B&B Holdings, Inc. (the "Arizona Cardinals Team") (collectively, the "Arizona Cardinals"), and Defendant Hunt entered

into an agreement, dated August 12, 2003, pursuant to which the Owner and Arizona Cardinals Team engaged Hunt to design and construct the Arizona Cardinals Stadium.

32.     Hunt and Uni-Systems entered into a subcontract agreement, dated January 14, 2004, pursuant to which Hunt engaged Uni-Systems to design, fabricate, and install and warrant certain portions of the mechanization systems for the retractable roof ("Cardinals Retractable Roof") for the Arizona Cardinals Stadium.

33.     In connection with the Cardinals Retractable Roof project, Uni-Systems provided the Arizona Cardinals with proprietary software programs and embedded software to control and operate the Cardinals Retractable Roof, as well as a Retractable Roof Operation and Maintenance Manual and additional accompanying electronically stored information.  The electronically stored information was protected with passwords and contained Uni-Systems' confidential and proprietary trade secrets.  Pursuant to the confidentiality provisions associated with Uni-Systems' trade secrets software and the other data, the software and other data was to be kept in strict confidence, used solely with respect to the Cardinals Retractable Roof project, and not disclosed to or used by others under any circumstance without Uni-Systems' consent.

## 2.     Hardesty & Hanover Misappropriated Uni-Systems' Trade Secrets In Connection With Its Maintenance of the Arizona Cardinals Stadium Retractable Roof

34.     Owner engaged its agent, Global Spectrum ("Manager"), to maintain, repair, and operate the Arizona Cardinals Stadium, including the Cardinals Retractable Roof.  In order to fulfill that engagement, on May 3, 2006, the Manager entered into a maintenance agreement with Uni-Systems, pursuant to which Uni-Systems provided certain maintenance of and repairs to the Cardinals Retractable Roof.

35.     On information and belief, by this time, without access to Uni-Systems' trade secrets, including safety features incorporated into the software implemented operation of

bogies, Defendant Hardesty & Hanover had failed to develop competitive and cost-efficient offerings that would provide potential customers with the safety assurances necessary to win a stadium retractable roof contract. Indeed, Defendant Hardesty & Hanover had never designed or built a retractable roof for any stadium anywhere in the world.

36. On information and belief, in an effort to become a viable competitor in the stadium retractable roof market and to obtain valuable inside information about Uni-Systems' innovative systems— information that it would never have been able to obtain without enormous investment in research and development— Defendant Hardesty & Hanover offered to handle the maintenance of the Cardinals Retractable Roof, at a financial loss, in order to induce the Arizona Cardinals into selecting them as its maintenance provider.

37. On information and belief, Defendant Hardesty & Hanover's purpose for pursuing this loss-leading arrangement with the Cardinals was nothing less than theft: to steal Uni-Systems' stadium retractable roof technology protected by trade secreted innovations to unlawfully compete against Uni-Systems in the stadium retractable roof market.

38. On information and belief, Defendant Hardesty & Hanover's offer to the Cardinals to maintain the Cardinals' Retractable Roof for less than cost had its intended effect. In 2009, the Arizona Cardinals terminated its maintenance agreement with Uni-Systems, and entered into a multi-year maintenance contract with Defendant Hardesty & Hanover.

39. On information and belief, during the period in which Defendant Hardesty & Hanover handled the maintenance of the Cardinals Retractable Roof, Defendant Hardesty & Hanover improperly and unlawfully accessed Uni-Systems' confidential information and exploited it to develop offerings substantially similar to Uni-Systems products and services.

40.     On information and belief, in 2010, after having improperly accessed and taken what it was after—Uni-Systems' trade secrets— Defendant Hardesty & Hanover ended its stadium roof maintenance relationship with the Arizona Cardinals.

41.     Having canceled its agreement with Uni-Systems in order to engage with Defendant Hardesty & Hanover, only to have Defendant Hardesty & Hanover terminate its loss leading agreement after it had the obtained Uni-Systems' trade secreted information, the Arizona Cardinals entered into another agreement with Uni-Systems renewing Uni-Systems as the maintenance provider in November of 2011.

**C.     USTA Arthur Ashe Stadium Retractable Roof**

**1.     Hardesty & Hanover Was Awarded the Arthur Ashe Stadium Retractable Roof Design Bid**

42.     In or around 2011, Uni-Systems learned that Defendant USTA planned to construct a retractable roof over Arthur Ashe Stadium (the "Ashe Retractable Roof").

43.     The USTA hired Defendant Rossetti as designer and architect of the Ashe Retractable Roof.

44.     The USTA hired Defendant Hunt to build the Ashe Retractable Roof.

45.     In 2012, with Defendant Hardesty & Hanover now in place as a Uni-Systems competitor, Defendants USTA, Hunt and Rossetti provided a specification for the Ashe Retractable Roof to Uni-Systems and requested an initial design proposal, which Uni-Systems in turn delivered.  The specification for the Ashe Retractable Roof was based on a cable net architecture, which the Defendants would later abandon.  Uni-Systems explored the Defendants' design, dutifully advanced the design, and provided budgetary pricing.  The Defendants then asked Uni-Systems to complete the design, but for only a fraction of Uni-Systems' normal fee.

46.     To accept the Defendants' reduced fee terms would have been contrary to Uni-Systems' long-term practice.  On information and belief, the Defendants knew that it could demand a reduced fee for the design because if Uni-Systems refused, they now had an alternative in Hardesty & Hanover, inexperienced in retractable roof design but armed with Uni-Systems' trade secrets.  Uni-Systems had never before had to bid on a project under such conditions, and accordingly refused to perform the design work for the reduced fee.

47.     On information and belief, Defendant Hardesty & Hanover thereafter was awarded the opportunity to form a team with Defendant Morgan to both design and build for the Ashe Retractable Roof.

48.     Uni-Systems received and reviewed mechanical drawings for the Ashe Retractable Roof in the summer of 2015, and discovered thereafter based on the drawings certain key similarities to the Cardinals Retractable Roof design, which led Uni-Systems to conclude that Defendant Hardesty and Hanover had stolen Uni-Systems' trade secrets.  On information and belief, Defendant Hardesty & Hanover was awarded the opportunity to design and build the Ashe Retractable Roof by utilizing both Uni-Systems trade secrets it had taken from the Arizona Cardinals and by infringing on Uni-Systems' patented technology.

49.     Defendant Hardesty & Hanover ultimately served as consultant to Defendant Morgan for the design-build services to engineer and fabricate the Ashe Retractable Roof.

50.     Morgan Kinetic Structures, a division of Defendant Morgan, was retained to supply mechanisms for the Ashe Retractable Roof.

51.     Defendant Geiger aided in the engineering development of the Ashe Retractable Roof.

52.     The Ashe Retractable Roof was completed and operational before commencement of the 2016 U.S. Open. Tennis Tournament in August 2016.   Throughout the U.S. Open tournament, the press and commentators praised the Ashe Retractable Roof to the millions of people watching on television.

53.     With Hardesty & Hanover's theft orchestrated by Hunt of Uni-Systems' trade secrets, Uni-Systems' unique position and brand reputation in the marketplace is now and going forward very much at risk.

**2.      Hardesty & Hanover's Ashe Retractable Roof Design Infringes the Patents-in-Suit**

54.     The USTA Mechanical Drawings and Bogie Shop Drawings, attached as Exhibits C and D to the Complaint, respectively, reveal that Hardesty & Hanover's winning Ashe Retractable Roof design infringes Uni-Systems' Patents-in-Suit.

55.     For example, based on Uni-Systems' current investigation, the Ashe Retractable Roof design infringes at least claim 1 of the Retention Mechanism patent:

| Claim 1.  A stadium roof assembly, comprising; | The drawings for the USTA Retractable Roof Project at Arthur Ashe Stadium illustrate that the project involves the construction of a retractable roof system for a tennis stadium.  |
| --- | --- |

| at least one major truss spanning a distance between a first support location and a second support location that is at least 200 feet, said major truss being structurally configured as a tied arch having a curved convex upper portion and a tensioned lower portion that extends directly beneath said curved convex upper portion and is shaped, sized and positioned to assume most gravity induced stress within the major truss as tension; | The drawing included below illustrates that the retractable roof being constructed at Arthur Ashe Stadium includes at least one major truss spanning a distance between a first support location and a second support location.<br><br><br><br>As shown in the drawing included below, the truss is structurally configured as a tied arch and includes a curved convex upper portion and a tensioned lower portion that extends directly beneath the curved convex upper portion.<br><br> |
| at least one roof member that is secured to said major truss; | The drawings include below illustrate that at least one roof panel is secured to and moveable along the truss. For example, the dashed-line shown in the drawings illustrates the "approx[imate] limits of [the] retractable roof panel" in both the closed and open positions. |



| a curved, convex guide track that is secured to said curved, convex upper portion of said major truss, and wherein said roof member is constructed and arranged to be moved over said guide track; and | Included below is a close-up view of a portion of the drawing included above showing the retractable roof in the open position.  This drawing illustrates that a curved, convex guide track (e.g., a rail) is attached to the curved, convex upper portion of the truss. |
|---|---|



The roof panels are attached to "retractable roof bogie[s]" that travel along the rail. As illustrated by a comparison of the roof elevation drawings in the closed and open positions, the bogies travel along the rail as the roof panels are moved between the closed and open positions.



| a retention | The drawing included below provides a close-up view of the bogies used in the retractable roof system. As shown |

| | |
|---|---|
| mechanism for preventing said roof member from being lifted upwardly with respect to said guide track wherein said retention mechanism comprises at least one retention element for engaging a downwardly facing surface of said guide track in the event of initiation of upward vertical movement of said roof member relative to said guide track. | in the drawing, the bogie assembly includes an "uplift guard" that engages with a downwardly facing surface of the rail to prevent upward vertical movement of the roof panels.  |

56.     As a second example, based on Uni-Systems' current investigation, the Ashe

Retractable Roof design infringes at least claim 1 of the Lateral Release patent as well:

| | |
|---|---|
| Claim 1: The system for supporting a large overhead structural member for stable movement with respect to an underlying structure, comprising: | The drawings for the USTA Retractable Roof Project at Arthur Ashe Stadium illustrate that the project involves the construction of a retractable roof system for a tennis stadium. |



The drawings included below illustrate that the retractable roof panels move between a closed position and an open position. For example, the dashed-line shown in the drawings illustrates the "approx[imate] limits of [the] retractable roof panel" in both the closed and open positions.



| [a] first and second transport mechanisms, each of which | Included below is a close-up view of a portion of the retractable roof system, which shows the retractable roof in the closed position.  This drawing illustrates first and second transport mechanisms in the form of bogies that travel in a predetermined path along a single rail that is attached to the underlying roof truss. |
|---|---|

is constructed and arranged to permit the large overhead structural member to move in a predetermined path with respect to the underlying structure, said transport mechanism comprising a single trolley rail on the under lying structure with no additional rail and a plurality of rail follower wheels on the large overhead structural member that are adapted to ride on said single trolley rail; and



Bogies

As shown in the drawings included below, each of the bogies that travels along the rail includes a plurality of follower wheels that ride on the rail.



Follower Wheels



Follower Wheels

| | |
|---|---|
| [b] a lateral release system for each of said transport mechanism, interposed between said rail follower wheels and the large overhead structural member, for maintaining the transport mechanism in a predetermined orientation while simultaneously permitting a limited amount of movement of the large overhead structural member in a direction that is nonparallel to said predetermined path, wherein said system transmits a very small side load to said single trolley rail with no | The drawings included below illustrate that the retractable roof system includes a lateral release system. For example, the drawing included below is a section view of the equalizer assembly of the bogie assembly used in the retractable roof system.  The drawing and the associated bill of materials (BOM) illustrates that the equalizer assembly includes a linear slide bearing in the form of a bushing (5) and a pin (3).  The pin (3) is inserted through the bushing (5) such that the bushing (5) can slide along the surface the pin (3) along axis A (shown in red), which is substantially perpendicular to the rail.  The movement of the bushing (5) relative to the pin (3) enables lateral movement of the retractable roof panels (e.g., movement in a direction that is not parallel to the rail).  |

need for additional lateral reinforcement, said lateral release system comprising a linear slide bearing.

| ITEM | QTY | DESCRIPTION | STOCK NUMBER | SHEET/KEY | WT EA |
|---|---|---|---|---|---|
| | | BOM | | | |
| 1 | 6 | FLOATING YOKE ASSEMBLY | 14P11704 | MK302 01-01 | |
| 2 | 1 | FLOATING YOKE FABRICATION | | MK305 01-01 | 4267 |
| 3 | 1 | EQUALIZER PIN - FLOAT | | MK309 01-03 | 2275 |
| 4 | 2 | KEEPER PLATE | | MK309 01-05 | 181 |
| 5 | 2 | BUSHING | | MK309 01-02 | 111 |
| 6 | 2 | BELLOWS, 21" ID x 25" OD x 27 1/2" EXTENDED LENGTH | BS-535-0700-050S2EE | | 8 |
| 7 | 32 | HEX HEAD CAP SCREW, 1-8UNC x 4", GR-5 | HHCS 016-008x016 GR5 | | 1 |
| 8 | 32 | LOCK WASHER 1" HELICAL SPRING | LW  016 HS | | 0 |

## COUNT I: INFRINGEMENT OF THE RETENTION MECHANISM PATENT (U.S. PATENT NO. 6,789,360 (Against All Defendants)

57.     Plaintiff Uni-Systems re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-56 of the Complaint as if fully set forth herein.

58.     On September 14, 2004, U.S. Patent No. 6,789,360 ("the Retention Mechanism patent"), entitled "*Retractable Roof System for Stadium*," was duly and legally issued by the United States Patent and Trademark Office.

59.     Uni-Systems is the owner, by assignment, of all rights, title, and interest in the Retention Mechanism patent.

60.     Defendants have infringed and continue to infringe the Retention Mechanism patent in this District and throughout the United States by making, using, importing, offering for sale, and/or selling the Ashe Retractable Roof design, which practices one or more claims of the Retention Mechanism patent.  Defendants are liable for their infringement of the Retention Mechanism patent pursuant to 35 U.S.C. § 271(a).

61.     As owner of the Ashe Retractable Roof, Defendant USTA has infringed and continues to infringe the Retention Mechanism patent under 35 U.S.C. § 271(a) by, among other things, using the Ashe Retractable Roof, which was completed, operational, and put into service

as of August 2016.

62.    As lead designer and architect of the Ashe Retractable Roof, Defendant Rossetti has infringed and continues to infringe the Retention Mechanism patent under 35 U.S.C. § 271(a) by, among other things, making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

63.    As lead builder of the Ashe Retractable Roof, Defendant Hunt has infringed and continues to infringe the Retention Mechanism patent under 35 U.S.C. § 271(a) by, among other things, making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

64.    As designer and builder of the Ashe Retractable Roof, Defendant Hardesty & Hanover has infringed and continues to infringe the Retention Mechanism patent under 35 U.S.C. § 271(a) by, among other things, offering for sale and selling a design to Defendants USTA, Hunt, and Rossetti that practices one or more claims of the Retention Mechanism patent. Defendant Hardesty & Hanover has also infringed and continues to infringe the Retention Mechanism patent by making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

65.    As designer and builder of the Ashe Retractable Roof, Defendant Morgan has infringed and continues to infringe the Retention Mechanism patent under 35 U.S.C. § 271(a) by, among other things, offering for sale and selling a design to Defendants USTA, Hunt, and Rossetti that practices one or more claims of the Retention Mechanism patent. Defendant Morgan has also infringed and continues to infringe the Retention Mechanism patent by making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

66.     As engineer for the Ashe Retractable Roof, Defendant Geiger has infringed and continues to infringe the Retention Mechanism patent under 35 U.S.C. § 271(a) by, among other things, making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

67.     Defendants have been placed on notice of the Retention Mechanism patent at least as early as on or about May 24, 2016.

68.     As a result of Defendants' infringement of the Retention Mechanism patent, Uni-Systems has suffered and will continue to suffer damages.  Under 35 U.S.C. § 284, Uni-Systems is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

69.     Defendants' acts of infringement of the Retention Mechanism patent herein have been committed and are being committed with full knowledge of Uni-Systems' rights in the patent.  On information and belief, Defendants have acted and are continuing to act despite knowing that their actions constituted direct and/or indirect infringement of a valid patent since at least May 24, 2016, when Uni-Systems sent a letter to Defendants USTA, Hardesty & Hanover, and Rossetti notifying them of the infringement.  By May 31, 2016, USTA provided a copy of Uni-Systems' letter to Hunt, which put Morgan on notice of the letter as well.  Rossetti and Morgan informed Geiger of Uni-Systems' claims by no later than July 20, 2016.  Thereafter, not only did Defendants proceed to enjoy the use of the retractable roof at the U.S. Open, Defendant Hunt on or about June 3, 2016, sent out bid notifications for another retractable roof to be built over the USTA's Louis Armstrong Stadium.  The notification included project drawings for a retractable roof that, if built, would also infringe Uni-Systems' patented intellectual property.  Defendants ignored Uni-Systems' request made on June 10, 2016, to

suspend the bid process and discuss Uni-Systems' claims.  Defendants' acts, since at least May 24, 2016, if not before, constitute willful and deliberate infringement, entitling Uni-Systems to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

70.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to Uni-Systems, for which there is no adequate remedy at law, entitling Uni-Systems to injunctive relief.

### COUNT II: INFRINGEMENT OF THE LATERAL RELEASE PATENT (U.S. PATENT NO. 7,594,360 (Against All Defendants)

71.     Plaintiff Uni-Systems re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-56 of the Complaint as if fully set forth herein.

72.     On September 29, 2009, U.S. Patent No. 7,594,360 ("the Lateral Release patent"), entitled "*Lateral Release Mechanism for Movable Roof Panels,*" was duly and legally issued by the United States Patent and Trademark Office.

73.     Uni-Systems is the owner, by assignment, of all rights, title and interest in the Lateral Release patent.

74.     Defendants have infringed and continue to infringe the Lateral Release patent in this District and throughout the United States by making, using, importing, offering for sale, and/or selling the Ashe Retractable Roof design, which practices one or more claims of the Lateral Release patent.  Defendants are liable for their infringement of the Lateral Release patent pursuant to 35 U.S.C. § 271(a).

75.     As owner of the Ashe Retractable Roof, Defendant USTA has infringed and continues to infringe the Lateral Release patent under 35 U.S.C. § 271(a) by, among other things, using the Ashe Retractable Roof, which was completed, operational, and put into service as of

August 2016.

76.     As lead designer and architect of the Ashe Retractable Roof, Defendant Rossetti has infringed and continues to infringe the Lateral Release patent under 35 U.S.C. § 271(a) by, among other things, making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

77.     As lead builder of the Ashe Retractable Roof, Defendant Hunt has infringed and continues to infringe the Lateral Release patent under 35 U.S.C. § 271(a) by, among other things, making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

78.     As designer and builder of the Ashe Retractable Roof, Defendant Hardesty & Hanover has infringed and continues to infringe the Lateral Release patent under 35 U.S.C. § 271(a) by, among other things, offering for sale and selling a design to Defendants USTA, Hunt, and Rossetti that practices one or more claims of the Lateral Release patent.  Defendant Hardesty & Hanover has also infringed and continues to infringe the Lateral Release patent by making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

79.     As designer and builder of the Ashe Retractable Roof, Defendant Morgan has infringed and continues to infringe the Lateral Release patent under 35 U.S.C. § 271(a) by, among other things, offering for sale and selling a design to Defendants USTA, Hunt, and Rossetti that practices one or more claims of the Lateral Release patent.  Defendant Morgan has also infringed and continues to infringe the Lateral Release patent by making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

80.     As engineer for the Ashe Retractable Roof, Defendant Geiger has infringed and

continues to infringe the Lateral Release patent under 35 U.S.C. § 271(a) by, among other things, making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.

81.    Defendants have been placed on notice of the Lateral Release patent at least as early as on or about May 24, 2016.

82.    As a result of Defendants' infringement of the Lateral Release patent, Uni-Systems has suffered and will continue to suffer damages.  Under 35 U.S.C. § 284, Uni-Systems is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial.

83.    Defendants' acts of infringement of the Lateral Release patent herein have been committed and are being committed with full knowledge of Uni-Systems' rights in the patent. On information and belief, Defendants have acted and are continuing to act despite knowing that their actions constituted direct and/or indirect infringement of a valid patent since at least May 24, 2016, if not before, when Uni-Systems sent a letter to Defendants USTA, Hardesty & Hanover, and Rossetti notifying them of the infringement.  By May 31, 2016, USTA provided a copy of Uni-Systems' letter to Hunt, which put Morgan on notice of the letter as well.  Rossetti and Morgan informed Geiger of Uni-Systems' claims by no later than July 20, 2016.  Thereafter, not only did Defendants proceed to enjoy the use of the retractable roof at the U.S. Open, Defendant Hunt on or about June 3, 2016, sent out bid notifications for another retractable roof to be built over the USTA's Louis Armstrong Stadium.  The notification included project drawings for a retractable roof that, if built, would also infringe Uni-Systems' patented intellectual property.  Defendants ignored Uni-Systems' request made on June 10, 2016, to suspend the bid process and discuss Uni-Systems' claims.  Defendants' acts, since at least May

31, 2016, constitute willful and deliberate infringement, entitling Uni-Systems to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

84.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to Uni-Systems, for which there is no adequate remedy at law, entitling Uni-Systems to injunctive relief.

### COUNT III: FEDERAL MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836
### (Against Defendants Hardesty & Hanover and Hunt)

85.     Plaintiff Uni-Systems re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-56 of the Complaint as if fully set forth herein.

86.     By committing the actions as set forth herein, Hardesty & Hanover has misappropriated and continues to misappropriate Uni-Systems' trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1839.

87.     Uni-Systems owns and possesses confidential and proprietary software, machining, material selection and assembly procedures and other information, which includes compilations, methods, techniques, processes, procedures, programs, and codes, and constitutes Uni-Systems' trade secrets.

88.     Uni-Systems' trade secrets are related to a product or service used in, or intended for use in, interstate commerce, as they are used in connection with Uni-Systems' products and services, which are offered and used across the country.

89.     Uni-Systems' trade secrets were developed through great effort and expense in terms of manpower, time, and costs.

90.     Uni-Systems has taken reasonable and careful measures to protect and maintain the confidentiality and secrecy of its trade secrets, including by limiting access to them, and by

requiring confidentiality provisions on Uni-Systems' customers and clients that prohibit, among other things, unauthorized access, uses, and disclosure.   These provisions require strict confidence and prohibit disclosure or use of Uni-Systems' trade secrets without Uni-Systems' consent.   Uni-Systems' trade secrets cannot be properly acquired or duplicated because of the limited number of individuals who can access them, because they are maintained by Uni-Systems personnel and customers who are contractually obligated to maintain Uni-Systems' trade secrets.

91.     Uni-Systems' trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by others because such information is extremely valuable to Uni-Systems, critical to the operation of Uni-Systems' business, and, if available to others, would enable them to compete with Uni-Systems to Uni-Systems' detriment.

92.     On information and belief, Hardesty & Hanover acquired knowledge of Uni-Systems' trade secrets by theft, and has used and continues to make new use of Uni-Systems' trade secrets without the express or implied consent of Uni-Systems.   These uses include Hardesty & Hanover's use of Uni-Systems trade secrets for projects for the USTA including the Ashe Stadium project and the USTA's new Louis Armstrong Stadium project.

93.     On information and belief, Hardesty & Hanover's and Hunt's uses of Uni-Systems' trade secrets has been without Uni-Systems' express or implied consent, and Hardesty & Hanover and Hunt knew or had reason to know that their knowledge of the trade secrets was derived from or through a person who had stolen the trade secrets, acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret, or derived from or through a person who owed a duty to Uni-Systems to maintain the secrecy of

the trade secrets or limit the use of the trade secrets.

94.     Hardesty & Hanover continues to misappropriate Uni-Systems' trade secrets through the continual use and operation of the Ashe Retractable Roof and its pursuit of the Louis Armstrong Stadium roof project.   Also, on information and belief, Hardesty & Hanover continually uses Uni-Systems' trade secrets to unfairly compete with and undermine Uni-Systems' established and prospective business, for example, in submitting bids and developing offerings for another retractable roof at the USTA using Uni-Systems' trade secrets.

95.     Defendants Hardesty & Hanover's and Hunt's conduct constitutes knowing, willful, and malicious misappropriation.

96.     As a direct and proximate result of Defendants Hardesty & Hanover's and Hunt's wrongful conduct, Uni-Systems has been substantially and irreparably harmed in an amount not readily capable of determination and for which there is no adequate remedy at law.   Unless restrained by this Court, Defendants Hardesty & Hanover and Hunt will cause further irreparable injury to Uni-Systems.   Uni-Systems is entitled to injunctive relief enjoining Defendants Hardesty & Hanover and Hunt, their agents and employees, and all persons acting in concert or participation with them, from engaging in any further use of Uni-Systems' proprietary and confidential information.

97.     As a result of Defendants Hardesty & Hanover's and Hunt's actions, Uni-Systems has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and exemplary damages in an amount to be proven at trial.

98.     Defendants Hardesty & Hanover and Hunt have been unjustly enriched as a result of its misappropriation of Uni-Systems' trade secrets.   Uni-Systems therefore seeks recovery for this unjust enrichment.

99.     To the extent Uni-Systems' actual damages and Defendants Hardesty & Hanover's and Hunt's unjust enrichment are not reasonably ascertainable or subject to proof, Uni-Systems is entitled to a reasonable royalty for the use of such trade secrets.

### COUNT IV: NEW YORK MISAPPROPRIATION OF TRADE SECRETS
### (Against Defendants Hardesty & Hanover and Hunt)

100.    Plaintiff Uni-Systems re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-99 of the Complaint as if fully set forth herein.

101.    By committing the actions as set forth herein, Hardesty & Hanover and Hunt have misappropriated and continue to misappropriate Uni-Systems' trade secrets in violation of New York law.

102.    Uni-Systems owns and possesses confidential and proprietary software, which constitutes trade secrets and proprietary confidential information continuously used in the operation of Uni-Systems' business under New York law.

103.    Uni-Systems' trade secrets were developed through great effort and expense in terms of manpower, time, and costs.  Uni-Systems' trade secrets are extremely valuable to Uni-Systems, critical to the operation of Uni-Systems' business, and, if available to others, would enable them to compete with Uni-Systems to Uni-Systems' detriment.

104.    Uni-Systems has taken reasonable and careful measures to protect and maintain the confidentiality and secrecy of its trade secrets, including by limiting access to them, and by requiring confidentiality provisions on Uni-Systems' customers and clients that prohibit, among other things, unauthorized access, uses, and disclosure.   These provisions require strict confidence and prohibit disclosure or use of Uni-Systems' trade secrets without Uni-Systems' consent.  Uni-Systems' trade secrets cannot be properly acquired or duplicated because of the limited number of individuals who can access them, and the contractual limitations imposed on

such individuals.

105.     On information and belief, Hardesty & Hanover improperly stole, used and continues to use Uni-Systems' trade secrets without the express or implied consent of Uni-Systems.  On information and belief, at the time Hardesty & Hanover used and continues to use Uni-Systems' trade secrets without its express or implied consent, it knew or had reason to know that the information constituted confidential and proprietary trade secrets of Uni-Systems.

106.     As a direct and proximate result of Hardesty & Hanover's and Hunt's wrongful conduct, Uni-Systems has been substantially and irreparably harmed in an amount not readily capable of determination and for which there is no adequate remedy at law.  Unless restrained by this Court, Hardesty & Hanover and Hunt will cause further irreparable injury to Uni-Systems.  Uni-Systems is entitled to injunctive relief enjoining Hardesty & Hanover and Hunt, their agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of Uni-Systems' proprietary and confidential information.

107.     As a result of Hardesty & Hanover's and Hunt's actions, Uni-Systems has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

## COUNT V:  NEW YORK UNFAIR COMPETITION
### (Against Defendants Hardesty & Hanover and Hunt)

108.     Plaintiff Uni-Systems re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-107 of the Complaint as if fully set forth herein.

109.     Uni-Systems has invested significant time, expense, and effort to develop confidential and proprietary software, machining, material selection and assembly procedures, all of which constitute Uni-Systems' trade secrets and confidential and proprietary information.

110.     Uni-Systems' trade secret and confidential and proprietary software is used, among other ways, to implement the operation of bogies and is highly valuable to Uni-Systems because of its confidential nature.  The trade secret and confidential and proprietary science, research, and testing embodied in Uni-Systems' machining, material selection and assembly procedures provides commercial and business advantage to Uni-Systems by aiding Uni-Systems in offering reliable, long-lasting, and competitively priced stadium retractable roofs.  Together, these trade secrets and confidential and proprietary information are owned exclusively by Uni-Systems and are extremely valuable to Uni-Systems, critical to the operation of Uni-Systems' business, and, if available to others, would enable others to compete with Uni-Systems to Uni-Systems' detriment.

111.     Uni-Systems has taken reasonable and careful measures to protect and maintain the confidentiality of its software, machining, material selection and assembly procedures, including by limiting access to this information, and by requiring Uni-Systems' customers and clients to sign confidentiality provisions that require strict confidence and that prohibit, among other things, unauthorized access, use, and disclosure.

112.     Uni-Systems' trade secret and confidential and proprietary software, machining, material selection and assembly procedures cannot be properly acquired or duplicated because of the limited number of individuals who can access this information, and because of the contractual limitations imposed on such individuals.

113.     On information and belief, Defendant Hardesty & Hanover misappropriated Uni-Systems' trade secret and confidential and proprietary software, machining, material selection and assembly procedures by improperly stealing and using this information without the express or implied consent of Uni-Systems.

114.    On information and belief, Defendants Hardesty & Hanover and Hunt knew or had reason to know that this information constituted trade secrets and confidential and proprietary information of Uni-Systems at the time it stole the information.  Hardesty & Hanover and Hunt nevertheless used and continues to use this information without Uni-Systems' authorization or consent.

115.    Defendants Hardesty & Hanover's and Hunt's wrongful acquisition and unauthorized use of Uni-Systems' trade secret and confidential and proprietary software, machining, material selection and assembly procedures was in bad faith.

116.    On information and belief, Defendant Hardesty & Hanover and Hunt have used Uni-Systems' trade secret and confidential and proprietary software, machining, material selection and assembly procedures to solicit customers and clients and to bid for projects in direct competition with Uni-Systems.

117.    As a direct and proximate result of Defendant Hardesty & Hanover's and Hunt's bad faith misappropriation, Uni-Systems has suffered a loss of customers and business.  Uni-Systems is entitled to an accounting and compensatory damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

118.    Plaintiff Uni-Systems prays for the following relief:

a.    That Defendants and their affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in concert with any of them be permanently enjoined from infringement, inducement of infringement, and contributory infringement of each of the Patents-in-Suit;

      b.     That Uni-Systems be awarded damages for Defendants' infringement of the Patents-in-Suit, together with interest (both pre- and post-judgment interest), costs, and disbursements as determined by this court under 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured, but in any event no less than a reasonable royalty;

      c.     That this action be adjudged an exceptional case and Uni-Systems be awarded its attorneys' fees in this action pursuant to 35 U.S.C. § 285;

      d.     That all Defendants and their affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in concert with it be preliminarily and permanently enjoined from directly or indirectly misappropriating and continuing to utilize Uni-Systems' trade secrets;

      e.     That Uni-Systems be awarded damages for actual loss caused by the misappropriation of its trade secrets, and damages for unjust enrichment caused by the misappropriation of Uni-Systems' trade secrets not addressed in computing damages for actual loss;

      f.     That Uni-Systems be awarded a reasonable royalty for Defendant Hardesty & Hanover's misappropriation of Uni-Systems' trade secrets;

      g.     That Uni-Systems be awarded exemplary damages for Defendant Hardesty & Hanover's willful and malicious misappropriation of Uni-Systems' trade secrets;

      h.     That Uni-Systems is entitled to reasonable costs, including attorneys' fees and expenses; and

      i.     That Uni-Systems be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.


Dated:  New York, New York
        January 11, 2017

                      NORTON ROSE FULBRIGHT US LLP

                      By:  /s/ Paul B. Keller_____

                          Paul B. Keller
                          1301 Avenue of the Americas
                          New York, New York 10019-6022
                          (212) 318-3000

                          *Attorney for Plaintiff Uni-Systems, LLC*