UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNI-SYSTEMS, LLC,

                         Plaintiff,

            -against-

U.S. TENNIS ASSOCIATION, et al.,

                        Defendants.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**
17 CV 147 (KAM) (CLP)

POLLAK, United States Magistrate Judge:

      Plaintiff Uni-Systems, LLC brings this action against the United States Tennis Association, Inc. ("USTA"), Rossetti, Inc. ("Rossetti"), Hunt Construction Group, Inc. ("Hunt"), Hardesty & Hanover LLC and Hardesty & Hanover LLP (collectively referred to in the Complaint and throughout the proceedings as "Hardesty & Hanover"), Morgan Engineering Systems, Inc. ("Morgan"), and Geiger Engineers, P.C. (collectively, "defendants"), asserting a variety of patent infringement claims against all defendants, as well as trade secret claims and an unfair competition claim against Hardesty & Hanover and Hunt Construction (the "Trade Secret Defendants"), all flowing from defendants' involvement in the construction and maintenance of certain retractable stadium roofs. (See Compl., ECF No. 1).

      On September 6, 2017, the parties appeared before the undersigned for a status and hearing to address several discovery disputes.

## BACKGROUND

      Beginning in April 2017, the parties, at the Court's direction, engaged in limited discovery to facilitate settlement discussions. (See Order, Apr. 20, 2017, ECF No. 80). On July 19, 2017, the Court held a settlement conference. At the conclusion of the conference, the Court

addressed a number of discovery disputes that had been raised and instructed the parties to meet and confer to narrow these disputes if they continued to be unable to negotiate a settlement. (See Minute Entry, ECF No. 92).

On August 10, 2017, the parties advised the Court that they had been unable to negotiate a settlement and that they disagreed as to how the case should proceed. (See Joint Status Report, ECF No. 96). The parties subsequently submitted letters to the Court, raising unresolved discovery issues, which disputes were addressed during the September 6th conference. Among other issues, plaintiff contends that the defendants have refused to provide information requested in discovery and have instead interposed meritless objections. (See Pl.'s Letter, Aug. 10, 2017, ECF No. 97). For their part, the Trade Secret Defendants, Hardesty & Hanover and Hunt Construction Group, Inc., move to compel more specific interrogatory responses from Uni-Systems, before the defendants provide discovery about their own technology. (Letter Mot. to Compel, Aug. 25, 2017, ECF No. 101).

Based on the discussion during the September 6, 2017 hearing, the Court issued the following rulings.

## DISCUSSION

A. Petersen's Motion for Admission *Pro Hac Vice*

On August 31, 2017, David Pollack of Lewis Brisbois Bisgaard and Smith LLP, counsel for Rossetti, moved to admit Maxwell J. Petersen, an attorney admitted to practice in the State of Illinois, to this Court's bar *pro hac vice*. (See Petersen PHV Mot., Aug. 31, 2017, ECF No. 106). The Local Rule that governs the admission of attorneys *pro hac vice* to this Court's bar provides, in relevant part:

> A member in good standing of the bar of any state or of any United States District Court may be permitted to argue or try a particular case in whole or in part as counsel or advocate, upon motion (which may be made by the applicant) and (1) upon filing with the Clerk of the District Court a certificate of the court for each of the states in which the applicant is a member of the bar, which has been issued within thirty (30) days of filing and states that the applicant is a member in good standing of the bar of that state court, and an affidavit by the applicant stating (a) whether the applicant has ever been convicted of a felony, (b) whether the applicant has ever been censured, suspended, disbarred or denied admission or readmission by any court, (c) whether there are any disciplinary proceedings presently against the applicant and (d) the facts and circumstances surrounding any affirmative responses to (a) through (c); and (2) upon paying the required fee. Attorneys appearing for the Department of Justice may appear before the Court without requesting pro hac vice admission. . . . Only an attorney who has been so admitted or who is a member of the bar of this Court may enter appearances for parties, sign stipulations or receive payments upon judgments, decrees or orders.

E.D.N.Y. L. Civ. R. 1.3(c). The Clerk of Court posts compliant model forms, including a motion and affidavit, on the Court's website. (See Clerk of Court, PHV Forms & Instructions, U.S. District Court, E.D.N.Y., https://www.nyed.uscourts.gov/forms/all-forms/phv (last visited Sept. 11, 2017)). In addition to the Local Rule, the undersigned's Individual Rules of Practice require the moving attorney to provide a proposed order for admission *pro hac vice*. (See Cheryl L. Pollak, Individual Rules of Practice, https://img.nyed.uscourts.gov/rules/CLP-MLR.pdf (April 2017)).

Mr. Petersen submitted an affidavit in connection with his motion for *pro hac vice* admission, which stated that he is a member in good standing of the bar of Illinois. (See Petersen Aff., ECF No. 106-1). However, the affidavit failed to comply with the Local Rule because it did not state whether Mr. Petersen had ever been convicted of a felony, see L. Civ. R. 1.3(c)(1)(a), and did not indicate whether he had ever been disciplined in the past; it merely stated that "there are no pending disciplinary proceedings." See id. 1.3(c)(1)(b). On August 31,

3

2017, the Court denied the *pro hac vice* motion "without prejudice to renew upon the submission of an affidavit that conforms to the Local Rule." (Order Denying PHV Mot., Aug. 31, 2017, ECF No. 107).

On September 5, 2017, Mr. Pollack submitted a corrected affidavit from Mr. Petersen in connection with his Motion for Reconsideration of the Order denying admission without prejudice. (See Petersen Mot. for Recons., Sept. 5, 2017, ECF No. 108). Although counsel corrected certain errors in the affidavit, they failed to submit a proper proposed order. The proposed order submitted with the September 5th filing was incorrect because it listed the fee required by the Clerk of the Court as $25.00 (see Proposed Order, ECF No. 106-3), when the admission fee set by the Board of Judges for this District is actually $150.00. (See E.D.N.Y. A.O. 2014-11, Dec. 23, 2014).

At the September 6, 2017 hearing, Mr. Pollack acknowledged the error and advised the Court that he would submit a corrected proposed order. (See Tr. 4:5-4:22, Sept. 6, 2017). Despite Mr. Pollack's assurances that the matter would be handled, Mr. Petersen called the Court's clerk on September 7, 2017, asking why the Court had not entered an order granting his admission *pro hac vice*. Apparently Mr. Petersen, who did not attend the September 6th conference, was not informed that the matter had been raised, and that counsel had been directed to submit a new order.

"The court routinely grants attorneys who practice elsewhere the courtesy of representing clients who find themselves in litigation in this court." Spirit Locker, Inc. v. Evo Direct, LLC, No. 09-CV-1582, 2009 WL 1449062, at *1 (E.D.N.Y. May 22, 2009). By failing to review the Court's simple rules carefully, Mr. Pollack and Mr. Petersen have transformed this routine matter into one that has required an inordinate amount of time and attention by the Court. Admission

*pro hac vice* "is a privilege rather than a right[.]" Id. (citing Leis v. Flynt, 439 U.S. 438, 441-42 (1979)). One important consideration for the Court in determining whether to extend that privilege is whether an attorney provides "some reasonable assurances that [he is] familiar with the Local Rules and this Court's Individual Rules." United States v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 911 F. Supp. 743, 754 (S.D.N.Y. 1996). An attorney's failure to follow straightforward rules in seeking admission *pro hac vice* may undermine the Court's confidence that such an attorney will comply with the duties and responsibilities attendant to such admission. The Court mentions this not because Mr. Pollack and Mr. Petersen are unique in their failure to adhere to the Local Rules, but because such a discussion is necessary given the frequency of such inattentiveness that regularly consumes the Court's time.

The Court therefore denies the Motion for Reconsideration (ECF No. 108) without prejudice to renewal once a compliant proposed order has been submitted.

B. Discovery Disputes

1. Standards

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defenses and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Such discovery may proceed "in any sequence," and "discovery by one party does not require any other party to delay its discovery." Fed R. Civ. P. 26(d)(3). The Court possesses significant discretion, however, to limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause, Fed. R. Civ. P. 26(c)(1), or to modify

the sequence or timing of discovery "for the parties' and witnesses' convenience and in the interests of justice," Fed. R. Civ. P. 26(d)(3).

2. The Parties' Cross-Motions to Compel

Both the plaintiff and the defendants (primarily the Trade Secrets Defendants) have presented discovery disputes to the Court.

Uni-Systems seeks to compel interrogatory responses from all defendants. (See Pl.'s Letter, Aug. 10, 2017, ECF No. 97). The defendants have interposed various objections to plaintiff's interrogatories, but primarily they argue that Uni-Systems has failed to identify its alleged trade secrets with sufficient particularity to allow defendants to respond. (See Trade Secret Defs.' Resp. to Pl.'s Letter at 1, Aug. 15, 2017, ECF No. 98). Defendants also claim that they previously produced "all information and detailed drawings of every aspect of the Arthur Ashe Stadium roof." (Id. at 3). Thus, they contend that the interrogatories essentially "ask[] Defendants to make Uni-Systems' trade secret case for it." (Id.) Finally, with respect to interrogatory number 4, defendants argue that the interrogatory incorporates by reference Uni-Systems' own discovery responses, which were marked "Highly Confidential – Outside Attorneys' Eyes Only," thereby precluding defendants' personnel from seeing the interrogatory and making it impossible to verify any response. (See id.)

The Trade Secret Defendants bring a related motion to compel Uni-Systems to provide more complete responses to their interrogatories. (Trade Secret Defs.' Letter Mot. to Compel, Aug. 25, 2017, ECF No. 101). Specifically, the Trade Secret Defendants contend that "Uni-Systems is required by law (and also by common sense) to identify its asserted trade secrets 'with specificity' before requiring Defendants to provide discovery regarding their own accused technology." (Id. at 1). They complain that when asked to list the trade secrets at issue in this

6

case, Uni-Systems provided insufficient responses that lack particularity and amount to mere "categories of information." (Id. at 2). In support of this argument, defendants attach under seal a copy of Uni-Systems' responses, consisting of 36 pages describing its trade secrets, that defendants have annotated with 52 questions they would like answered to provide requisite specificity. (See Sealed Ex. to Defs.' Mot., Aug. 28, 2017, ECF No. 104). In response, Uni-Systems argues that that its responses are full and complete and that the defendants mischaracterize the standard for trade secret discovery. (Pl.'s Resp. in Opp'n at 1-2, Aug. 30, 2017, ECF No. 105). Uni-Systems also observes that defendants are not entitled to abstain from discovery simply because they desire more information from the plaintiff. (Id.)

Cases involving trade secrets claims follow the normal procedures set by the Federal Rules; however, courts have universally recognized that defining the scope of discovery in trade secrets cases can be particularly difficult, because there is highly sensitive information and proprietary concerns on both sides. See, e.g., DeRubeis v. Witten Techs., Inc., 244 F.R.D. 676, 679 (N.D. Ga. 2007); see generally Kevin R. Casey, Identification of Trade Secrets During Discovery: Timing & Specificity, 24 AIPLA Q.J. 191 (1996).

To address the scope of discovery in such cases, federal courts regularly require trade secrets plaintiffs to identify alleged trade secrets with "reasonable particularity." See, e.g., DeRubeis v. Witten Techs. Inc., 244 F.R.D. 676, 681 (N.D. Ga. 2007). Although definitions vary, that standard generally requires that the plaintiff provide enough information about the alleged trade secrets (1) to put the defendant on notice of the nature of plaintiff's claims, and (2) to allow defendant to discern the relevancy of any discovery requests. Id.; accord Switch Commc'ns Grp. v. Ballard, No. 2:11-cv-00285, 2012 WL 2342929 (D. Nev. June 19, 2012).

7

The standard is flexible and is driven by the Court's discretion. Courts have recognized that a very general showing may be sufficient, particularly in the common scenario where the trade secrets plaintiff may not know which parts of its trade secrets have been misappropriated or cannot determine the full scope of its claims until it gains a better understanding of how a defendant operates. See Vesta Corp. v. Amdocs Mgmt. Ltd., 147 F. Supp. 3d 1147, 1154 (D. Or. 2015) (quoting DeRubeis v. Witten Techs., Inc., 244 F.R.D. at 680). Thus, the strength of the showing sufficient to identify trade secrets with sufficient particularity varies with the facts and stage of the case. See Storagecraft Tech. Corp. v. Symantec Corp., No. 2:07 cv 856 CW, 2009 WL 361282, at *2 (D. Utah Feb. 11, 2009). It is clear, however, that generic descriptions of categories are insufficient to provide defendants with information sufficient to satisfy the "reasonable particularity" standard. See Knights Armament Co. v. Optical Sys. Tech., Inc., 254 F.R.D. 463, 467 (M.D. Fla. 2008).

Here, Uni-Systems has provided 36 pages describing their alleged trade secrets. After reviewing the responses, the Court concludes that these are not, as defendants contend, mere categories, but actually detailed descriptions of the alleged trade secrets. (See Tr. 70:9-23). Uni-Systems has therefore met its burden at this point in the litigation of describing its alleged trade secrets with reasonable particularity. The information they have provided informs the defendants of the nature of plaintiff's claims and allows them to determine the relevancy of discovery requests. Most of the defendants have answered the Complaint, suggesting an ability to defend the action, and the Trade Secret Defendants were able to discern enough information about the alleged trade secrets to draft 52 follow-up questions for which they would like more detail. Indeed, many of the arguments made at the hearing by counsel for the USTA and Hunt had no bearing on the availability of discovery, but instead related to the merits of whether

plaintiff's information constitutes a trade secret. (See, e.g., Tr. 34:21-35:11, 35:22-25). However, the requirement of reasonable particularity "does not create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists." Prolifiq Software, Inc. v. Veeva Sys., Inc. No. C 13-03644, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014) (discussing a similar requirement imposed by statute under Cal. Civ. Proc. Code § 2019.219) (quotations and citations omitted).

The Court finds that Uni-Systems has identified its trade secrets with reasonable particularity, and therefore, the Trade Secret Defendants' Motion to Compel more specific responses is denied.[1]

While the Uni-Systems' definitions of its trade secrets may satisfy the "reasonable particularity" requirement, these definitions may not be sufficiently specific to allow defendants to provide complete and discrete answers to plaintiff's interrogatories. Although Uni-Systems is entitled to further discovery from the defendants, the current interrogatories, as phrased, are entirely too broad, too unwieldy, and do not lend themselves to discrete responses. Indeed, as defendants point out, under the restrictions in the protective order relating to disclosure of certain information to the parties' employees, it may be difficult to verify the responses under oath without disclosing the alleged trade secrets to the verifying employee.

---

[1] The Court observes that the primary cases upon which defendants relied arose after extensive discovery and in the context of motions for summary judgment. See, e.g., Big Vision Private Ltd. v. E.I. DuPont de Nemours & Co., 1 F. Supp. 3d 224 (S.D.N.Y. 2014). Such cases are of little relevance at this early stage of the proceedings, but these decisions provide an important warning that a plaintiff who fails to take advantage of discovery to develop fully a sufficient description of its alleged trade secrets may be unable to meet a heightened particularity requirement after discovery that would be sufficient to withstand summary judgment.

Accordingly, the Court ordered plaintiff to redraft its interrogatories to allow for discrete answers and to meet and confer with the defendants regarding the proposed re-phrasing of Uni-Systems' current interrogatories. In lieu of interrogatories, the Court also suggested that plaintiff consider conducting depositions since the interrogatories at issue seek narrative answers that are often more suitable to a deposition format. The parties were also directed to confer on a mechanism that would allow the parties to provide verified responses to the discovery requests without violating the protective order. One suggestion was to have defendants designate a specific employee who could be read into and asked to sign the protective order.

3. <u>Production of Morgan's Source Code</u>

Uni-Systems seeks production of defendant Morgan's source code. Morgan argues that because the misappropriation of trade secrets claims in the Complaint are directed at other parties, plaintiff's request for production of the source code is "best thought of to be analogous to a third-party subpoena." (Tr. 47:14-15). Morgan further argues that any trade secrets found in the source code could only have come from the Trade Secret Defendants and not from any other source. (<u>See</u> <u>id.</u> at 47:16-48:15). Thus, Morgan contends that production of documents exchanged among the defendants should be sufficient, and that if no trade secrets are conveyed in these written communications, there is no need to review Morgan's source code for plaintiff's trade secrets. (<u>See</u> <u>id.</u>)

Morgan's argument that it should be treated as a non-party for purposes of this discovery ignores the clear language of Rule 26, which provides that "[p]arties may obtain discovery regarding *any nonprivileged matter* that is relevant to *any party's claim or defense*[.]" Fed. R. Civ. P. 26(b)(1) (emphasis added). The Rule does not distinguish among parties against whom various causes of action are asserted. It is true that the Court "may, for good cause, issue" a

protective order, Fed. R. Civ. P. 26(c)(1), but that Rule is permissive and, as explained below, Morgan has failed to demonstrate good cause for such an order at this time.

Furthermore, Morgan has provided no support for its contention that the written exchanges among defendants are the only possible way that Uni-Systems' trade secrets could have been conveyed to Morgan and thereby incorporated into the source code. (Id. at 48:22-49:22). Indeed, Morgan admits that it has produced only two documents to Uni-Systems.

What is more important, however, is that the source code is necessary to understanding how all of the defendants' various systems operate in practice. Plaintiff's counsel argues forcefully that "[t]here [i]s no question that [Morgan's] input on how the stadium – on how this roof works is front and center of the trade secret dispute in this case" (Tr. 13:1-4), and that "[i]t is the best evidence of how the system works." (Id. at 60:12-13). In arguing the need for more specific information from plaintiffs, defendants actually concede that a component that may not itself constitute a trade secret may receive trade subject protection when operated a certain way or in conjunction with various components. Thus, the information contained in Morgan's source code is at the heart of the dispute in these proceedings.

Morgan attempts to avoid that reality by arguing that disclosure of its code would not be proportional to the needs of this case. (See, e.g., Tr. 85:9-17). In making this conclusory argument, however, Morgan failed at the hearing to offer any concrete explanation for how production of the source code would not be proportional to the needs of this case, especially given that plaintiff has already produced its own source code. By contrast, the Court is persuaded by the argument that the source code is critical to an understanding of how defendants' system works. See Fed. R. Civ. P. 26(b)(1) (instructing courts determining whether

discovery is proportional to consider, among other factors, "the importance of the discovery in resolving the issues").

In the absence of any articulated reason why the source code cannot be adequately protected under the confidentiality and protective order proposed by the parties, the Court rejects Morgan's proportionality argument and orders the parties to meet and confer regarding an ESI protocol. Morgan is Ordered to produce the source code once the parties revise their proposed protective order and it has been entered by the Court.[2]

### 4. Lifting the Stay of Discovery

The Court lifts the stay on discovery. (See Tr. 50:22-25). The parties are directed to submit a proposed discovery plan to the Court within fourteen (14) days. The proposed discovery plan should address the points set forth in Fed. R. Civ. P. 26(f)(3), as well as the questions set forth in the undersigned's individual practices.

## C. The Parties' Proposed Protective Order

The parties have submitted a stipulated proposed protective order. (ECF No. 100). At the status conference, the Court reviewed its concerns regarding the proposed protective order. Specifically, the Court observed that the proposed protective order as drafted placed the procedural burden of seeking court approval for sealing on the party seeking to use the document, rather than on the party who produced the document under seal in the first instance. The Court reminded the parties that under the Federal Rules, the burden remains on the producing party which is seeking to prevent disclosure of the information, to demonstrate "good

---

[2] By letter dated September 13, 2017, Morgan represents that it is preparing the source code and will make it available to Uni-Systems once the parties agree on the terms of a protective order. (See Morgan Letter, Sept. 13, 2017, ECF No. 113).

cause" to the Court for filing a document under seal. See Fed. R. Civ. P. 26(c)(1); Cumberland Packing Corp. v. Monsanto Corp., 184 F.R.D. 504, 505 (E.D.N.Y. 1999) (citing In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987)). Similarly, regardless of the parties' agreement, the Court has an independent responsibility to protect the public's right to access, and ensure that good cause for sealing exists in order to vindicate the public's interest in monitoring court proceedings. See Cumberland Packing Corp. v. Monsanto Corp., 184 F.R.D. at 505.

The parties are therefore ordered to meet and confer for the purpose of revising the proposed protective order in light of the developments at the hearing and the concerns expressed in this opinion. They shall submit a revised proposed protective order within fourteen (14) days.

D. Case Management

1. ESI Order/Protocol

To date the parties have exchanged limited paper discovery to facilitate settlement discussions. Now that the Court has lifted the discovery stay, the parties are directed to meet and confer to develop an ESI protocol and order, after which they may begin to conduct discovery of electronically stored information.

2. Inspection

The Court previously directed the parties to agree on a procedure to allow for an inspection of the USTA's premises and the allegedly misappropriated technology. As of the date of the hearing, the parties had not been able to arrange an inspection. They are therefore ordered to discuss any requested inspection, including the scope and timing of any such inspection, at

their meet and confer and to advise the Court of their agreement or to present the Court with any disputes.

3. Depositions

The parties have suggested that this is a case in which the presumptive limit of seven hours for a deposition under Fed. R. Civ. P. 30(d)(1) will be insufficient. The Court agrees. (See Tr. 83:9-23). The parties shall confer and agree on the length of each deposition. Any disputes shall be brought to the Court's attention promptly.

4. Status Report and Telephone Conference

The parties shall submit a joint status report to the Court no later than September 29, 2017. A telephonic status conference is scheduled for **Wednesday, October 4, 2017 at 1:00 p.m.** The parties shall arrange for a teleconference number and shall provide the Court with dial-in instructions as part of the join status report.

CONCLUSION

For the reasons discussed above, plaintiff's Letter Motion to Compel (ECF No. 97) is granted in part; the Trade Secret Defendants' Letter Motion to Compel (ECF No. 101) is denied; and the Motion for Reconsideration of the Order on Mr. Petersen's Motion for Admission *pro hac vice* (ECF No. 108) is denied without prejudice. The stay of discovery is lifted. The parties shall submit a joint status report and proposed discovery plan addressing the items listed in Fed. R. Civ. P. 26(f)(3) by September 29, 2017. A telephone conference has been scheduled before the undersigned for **October 4, 2017 at 1:00 p.m.** The parties shall provide the Court with dial-in instructions as part of their joint status report.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 13, 2017

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York