UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x
UNI-SYSTEMS, LLC,

                    Plaintiff,

         -against-                              **MEMORANDUM AND ORDER**

UNITED STATES TENNIS                            17-cv-147 (KAM)
ASSOCIATION, INC., ROSSETTI INC.,
HUNT CONSTRUCTION GROUP, INC.,
HARDESTY & HANOVER, LLC,
HARDESTY & HANOVER LLP,
MORGAN ENGINEERING SYSTEMS,
INC., and GEIGER ENGINEERS, P.C.

                    Defendants.
--------------------------------------x

**MATSUMOTO, United States District Judge:**

         Plaintiff Uni-Systems, LLC, a Minnesota limited

liability company ("Uni-Systems") commenced this action on

January 11, 2017 against defendants United States Tennis

Association, Inc., a not-for-profit incorporated in New York

("USTA"); Rossetti Inc., a Michigan Corporation, ("Rossetti");

Hunt Construction Group, Inc., and Indiana corporation,

("Hunt"); Hardesty & Hanover, LLC, a Delaware limited liability

corporation; Hardesty & Hanover, LLP, a New York limited

liability corporation (together, "Hardesty & Hanover"); Morgan

Engineering Systems, Inc. ("Morgan"), and Ohio Corporation; and

Geiger Engineers, P.C. ("Geiger"), a New York professional

corporation (collectively, "Defendants"). (See ECF No. 1,

Complaint ("Compl.").)  The Complaint alleged infringement by

all defendants of two Uni-Systems patents, U.S. Patent No.
6,789,360 (the "Retention Mechanism patent") and U.S. Patent No.
7,594,360 (the "Lateral Release patent"), in connection with
defendants' roles as either owner, architect, engineer,
designer, or builder of the retractable roof at Arthur Ashe
Stadium in Flushing Meadows, New York (the "Ashe Retractable
Roof") and Hunt's role in sending out bid notifications for a
retractable roof to be built over the Louis Armstrong Stadium
that appeared to infringe Uni-System's intellectual property.
(*Id.* ¶¶ 42-84.)  The Complaint also alleged trade secret
misappropriation by Hunt and Hardesty & Hanover under the
Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., and
New York common law, as well as unfair competition, based on
Hunt and Hardesty & Hanover's alleged misappropriation of Uni-
Systems' trade secrets and other confidential and proprietary
information.  (*Id*. ¶¶ 85-117.)

On October 20, 2017, Plaintiff moved to amend the
complaint.  (*See* ECF No. 151, Motion to Amend the Complaint;
151-2, First Amended Complaint ("Amended Complaint" or "FAC").)
The Amended Complaint alleges eight separate causes of action
against the named defendants except where stated: Count I -
infringement of the Retention Mechanism patent at Arthur Ashe
Stadium; Count II - Infringement of the Lateral Release patent
at Arthur Ashe Stadium; Count III  - infringement of the Lateral

Release patent at Louis Armstrong Stadium, against USTA, Hunt,

Rossetti, Morgan and Geiger; Count IV - federal misappropriation

of trade secrets under 18 U.S.C. § 1836, against Hardesty &

Hanover and Hunt; Count V - New York misappropriation of trade

secrets, against Hardesty & Hanover and Hunt; Count VI New York

unfair competition, against Hardesty & Hanover & Hunt; Count VII

breach of contract against Hunt for breach of the Subcontract

regarding the Arizona Cardinals Stadium Retractable Roof and

Count VIII breach of contract against Hardesty & Hanover for

breach of the confidentiality agreement for the Florida Marlins

Stadium peer review.

The Amended Complaint pleads three additional claims

for relief based on the additional facts discovered by plaintiff

during discovery:

> (1) a claim for patent infringement of the Lateral
> Release patent at the new Louis Armstrong Stadium,
> (*see* FAC ¶¶ 152-169); (2) a claim for breach of the
> Subcontract Agreement between Hunt and Uni-Systems
> at Cardinals Stadium, (*see* FAC ¶¶ 205-214); and (3)
> a claim for breach of the Confidentiality Agreement
> governing Hardesty & Hanover's peer review of the
> Marlins Ballpark retractable roof, (*see* FAC ¶¶ 215-
> 223).

(ECF No. 151-1, Pl. Mem. Supp. Mot. to Amend Compl. at 10.)

The Amended Complaint also adds three new parties: Matthew L.

Rossetti Architect, P.C. ("Matthew Rossetti P.C."), a New York

professional corporation and an entity related to existing

Defendant Rossetti, Inc., as well as Morgan Kinetic Structures,

Inc. ("Morgan Kinetic") and Morgan Automation, Inc. ("Morgan Automation"), both Ohio corporations and divisions of Defendant Morgan.  (*See* FAC ¶¶ 3, 6.)

On October 24, 2018, the court held a pre-motion conference where the parties agreed that plaintiff's Motion to Amend the Complaint would be evaluated using the Fed. R. Civ. P. 12(b)(6) standard for a motion to dismiss. On November 17, 2017, defendants opposed plaintiff's Motion to Amend and moved to dismiss the existing and proposed First Amended Complaint ("Amended Complaint" or "FAC").  Briefing on plaintiff's motion to amend and defendants' motions to dismiss was completed on January 19, 2018.

BACKGROUND

The well-pleaded factual allegations in the proposed First Amended Complaint are taken as true for purposes of deciding defendants' motions pursuant to Fed. R. Civ. P. 12(b)(6), and determining whether plaintiff, Uni-Systems, shall be granted leave to amend the Complaint.  *See Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir.2007).

Uni-Systems describes itself as the, "leading designer of retractable roof systems in the United States" and has designed and implemented retractable roof systems for major stadiums including Minute Maid Ballpark and Reliant Stadium in Houston, Texas; Marlins Ballpark in Miami, Florida; Lucas Oil

4

Stadium in Indianapolis, Indiana; Cowboys Stadium near Dallas, Texas; and University of Phoenix (Cardinals) Stadium in Glendale, Arizona.  (FAC ¶12).

In connection with its retractable roof designs, Uni-Systems developed valuable intellectual property including "U.S. Patent Nos. 6,789,360 ("the Retention Mechanism patent") and 7,594,360 ("the Lateral Release patent"), and trade secrets in at least nine categories that were incorporated in the Arthur Ashe and Louis Armstrong retractable roofs.  (*See* FAC ¶¶ 13–30.) Uni-Systems made a significant investment of money and time for the research, development and testing of systems for the retractable roofs.  (*Id*. ¶¶ 11–12.)

In January 2015, Hunt retained Uni-Systems to "design, fabricate, and install" the retractable roof at the Arizona Cardinals Stadium, and the Arizona Cardinals retained Uni-Systems to maintain and repair the retractable roof, once it was installed.  (*Id*. ¶ 57.)  For the duration of the project, Uni-Systems took careful measures to protect the confidentiality of its "software, mechanization design principles and criteria, methods for implementing the same using engineered solutions, and other information."  (*Id*. ¶ 198.)  Uni-Systems did this by limiting access to confidential information and requiring its customers and clients to sign confidentiality agreements that prohibited "unauthorized access, use, and disclosure" of the

confidential information.  (*Id.*)

Hunt was the general contractor on a number of projects Uni-Systems worked on as the "sole supplier of retractable roof services," but after years of working together, Hunt informed Uni-Systems that it was seeking to establish a second supplier.  (*Id.* ¶¶ 31–34, 52–55.)  In order to establish Hardesty & Hanover as a viable competitor with Uni-Systems, beginning in or around 2009, Hardesty & Hanover allegedly conspired with Hunt to misappropriate Uni-Systems' "trade secret and confidential and proprietary software, mechanization design principles and criteria."  Hardesty & Hanover was retained to conduct a peer review for the Florida Marlins Ballpark roof, and to provide maintenance services for the Cardinals Retractable Roof, in order to obtain plaintiff's highly valuable trade secrets and proprietary information in violation of state and federal law.  (*Id.* ¶¶ 32–71, 170-204.)  Hardesty & Hanover was inexperienced in designing retractable roofs for stadiums at the time.  (*Id.* ¶ 32.)  Hunt and Hardesty & Hanover's misappropriation also constituted breaches of their respective contracts with Uni-Systems.  (FAC ¶¶ 205-23.)

In or around 2011, Uni-Systems discovered that USTA intended to construct a retractable roof for Arthur Ashe Stadium and had hired Hunt to serve as the designer-builder.  (*Id.* ¶¶ 72-73.)  Hunt contracted with Matthew Rossetti P.C., for the

design and to serve as the official project architect for the
Ashe Retractable Roof.  Hunt also contracted with Morgan Kinetic
to supply roof mechanization design and construction services
for the Ashe Retractable Roof.  (*Id.* ¶¶ 72-75.)  Morgan Kinetic
was a division of Morgan Engineering, and Morgan Engineering
also worked as a Hunt subcontractor, "provid[ing] design build
services to engineer and fabricate the Ashe Retractable Roof."
(*Id.* ¶ 75.)  Geiger was the mechanization engineer for Matthew
Rossetti P.C., a role in which it assisted with the engineering
development, prepared performance criteria for the retractable
roof panels, and developed documentation, drawings, and
specifications for use in the bidding process for the Ashe
Retractable Roof.  (*Id.* ¶ 76.)  In 2012, USTA, Hunt, and
Rossetti provided a specification for the Ashe Retractable Roof
to Uni-Systems and requested an initial design proposal from
competitors, including Hardesty & Hanover and Uni-Systems.  (*Id.*
¶ 79.)  Uni-Systems delivered a proposed a design and a price,
and defendants asked Uni-Systems to complete the design, but for
a fraction of Uni-Systems' typical fee. (*Id.*)

Hunt and Hardesty & Hanover misappropriated Uni-
Systems trade secrets and infringed Uni-Systems patents to
facilitate the design and building of the Ashe Retractable Roof,
which was completed in August 2016, months after Uni-Systems had
first notified the defendants of its intellectual property

claims. (FAC ¶¶ 82–90, 125, 166.) Uni-Systems alleges, "the
Ashe Retractable Roof infringes Uni-Systems' Retention Mechanism
patent and its Lateral Release patent, and each of the
defendants has committed infringing acts related to the Ashe
Retractable Roof." (ECF No. 192-1, Uni-Systems Sealed Omnibus
Reply at 18[1] ("Omnibus Reply") (citing FAC ¶¶ 86–90, 106–51).)

In addition to the Ashe Retractable Roof, a
retractable roof was built on the Louis Armstrong Stadium on the
USTA campus with the participation of the named defendants
except for Hardesty & Hanover. (FAC ¶¶ 91–97.) Plaintiff
alleges that the Armstrong Retractable Roof also infringes
plaintiff's Lateral Release patent and utilizes misappropriated
trade secrets.[2] (*Id.* ¶¶ 98–105, 152–69.)

### DISCUSSION

I.   **UNI-SYSTEMS HAS NOT ESTABLISHED THAT VENUE IS PROPER FOR
     THE MORGAN CORPORATIONS AND ROSSETTI, Inc.**

As a preliminary matter, the court addresses whether
venue is proper as to four of the named defendants.

---

[1] Unless otherwise noted, all page numbers refer to the page number assigned
by the Electronic Filing System ("ECF").
[2] At the time of filing of the original complaint in January 2017, the Louis
Armstrong Stadium had not yet been completed, however, the Armstrong Stadium
is now substantially completed and was in use during the 2018 U.S. Open. (*See*
ECF No. 262, Defendants' Letter Withdrawing Arguments.)  Defendants Geiger
Engineers, Hunt and Rosetti, Inc. have withdrawn their arguments that the
patent claims on Louis Armstrong Stadium are premature. (*Id.*) Defendants
Hardesty & Hanover and Morgan Engineering Systems, Inc. did not raise that
defense. (*Id.*)

A.   Legal Standard

As prescribed by 28 U.S.C. § 1400(b) "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  The Plaintiff bears the burden of establishing that venue is proper.  *See In re ZTE (USA) Inc.,* 890 F.3d 1008, 1013 (Fed. Cir. 2018); *see also Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551–52 (E.D.N.Y. 2011) (citation omitted) ("If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue].").  Whether to dismiss an action for improper venue is within the district court's discretion. *Cold Spring*, 762 F. Supp. 2d at 551 (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)).  However, "[i]n analyzing a claim of improper venue [at the pleading stage], a court must view all facts in the light most favorable to the plaintiff."  *Id*. (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007)).

B.   The Morgan Corporations and Rossetti, Inc. Have Not
     Waived Their Venue Objections

Plaintiff has insufficiently pleaded that venue is proper in this district pursuant to 28 USC § 1400(b) with respect to Defendants Rossetti, Inc., Morgan Engineering, Morgan

Kinetic and Morgan Automation, and unconvincingly argues that the aforementioned parties waived their objections to venue by either failing to raise it in their responsive pleadings prior to the instant Motion to Dismiss, or by actively litigating the case.  The Morgan Corporations and Rossetti disagree and correctly rely on the Supreme Court's recent decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514 (2017), to establish that they did not waive venue, and that venue is improper as to the Morgan Corporations and Rossetti.

On May 22, 2017, the United States Supreme Court held that a domestic corporation defendant is a resident in its state of incorporation.  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514, 1520-21 (2017).  The Federal Circuit, applying *TC Heartland* to venue disputes has found, "There is no doubt after the decisions in *TC Heartland* and *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957), that a domestic corporation defendant is deemed to reside only in its state of incorporation."  *In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018); *see also In Re Micron Tech, Inc.,* 875 F.3d 1091, 1099-1100 (Fed. Cir. 2017).

The Federal Circuit has held that the venue defense asserted by defendants in the instant case was not available prior to the Supreme Court's decision in *TC Heartland* and, therefore, waiver of the defense under Federal Rule of Civil

Procedure 12(g)(2) and (h)(1)(A) is precluded. *In re Micron Tech., Inc.*, 875 F.3d at 1094. Under Federal Rule of Civil Procedure 12(h)(1):

> A party waives any defense listed in Rule 12(b)(2)–(5) by:
> (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
> (B) failing to either:
> > (i) make it by motion under this rule; or
> > (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

*Id.* at 1096 (citing Fed. R. Civ. P. 12). Plaintiff argues that, regardless of any change in the law, the Morgan Corporations' and Rossetti Inc.'s actions in failing to originally contest venue and in actively litigating the lawsuit after the decision in *TC Heartland* give rise to a presumption of waiver. Plaintiff cites the absence of a venue defense in Morgan Engineering's and Rossetti's respective answers. (*See* ECF. No. 55, Morgan Engineering Answer and Countercl. ¶ 6; ECF. No. 58, Rossetti Inc. Answer and Countercl. ¶ 10.) However, at the time of the Supreme Court's *TC Heartland Decision,* Morgan Engineering and Rossetti were the only parties to the case that disputed venue and both parties promptly moved to dismiss based on improper venue, after the decision and in accordance with the Court's scheduling orders directing settlement discussions and an anticipated request to move to dismiss the Complaint. (*See* Text Only Docket Order dated May 2, 2017; *see also* ECF No. 111,

Sealed Transcript of Proceedings Held September 6, 2017.)

Based on the foregoing, the court finds that there was no undue delay, and thus no waiver, of their venue defenses by Morgan Engineering and Rossetti Inc. in their answers to the original Complaint, prior to the change in law resulting from *TC Heartland*.[3] *See Dietz v. Bouldin, Inc.*, 136 S.Ct. 1885, 1893, 1897 (2016) (the discretion to find the venue defense forfeited must be exercised cautiously and with restraint). The Federal Circuit in *In re Micron* aptly noted that when the law bars the district court from adopting an argument to dismiss a case, requiring a party to assert the defense or risk waiving would improperly incentivize litigants to waste resources.

> When a defense or objection is futile in the sense that the law bars the district court from adopting it to dismiss [a complaint], to require the assertion of the defense or objection in an initial motion to dismiss, on pain of waiver, would generally be to require the waste of resources, contrary to [Fed. R. Civ. P.] Rule 1.

*In re Micron Tech*, 875 F.3d at 1097. Consequently, the court declines to find waiver of the lack of venue defense.

Given plaintiff's Motion to Amend, in which it argues that any amendment will not prejudice defendants due to the early stage of the case, the court declines to find that

---

[3] Morgan Kinetic Stuctures, Inc. and Morgan Automation raised their objections to venue in a pre-answer motion to dismiss after plaintiff sought to join them in the First Amended Complaint, and plaintiff does not specifically allege any waiver of a venue defense with regards those defendants. (ECF No. 200, Morgan Opposition.) As such there is no waiver of venue.

plaintiff would be prejudiced by filing its claims against
Morgan Engineering and Rossetti in the proper venues. (*See* ECF
No. 151-1, Pl. Mem. Supp. Mot. to Amend Compl., at 10.)  The
court finds plaintiff's other arguments in support of finding
waiver or forfeiture unavailing.

      C.    Additional Evidence is Needed to Determine Whether Venue
Is Improper As to the Morgan and Rossetti, Inc.
Defendants Under § 1400(b)

In any event, plaintiff has not met its burden to
establish that venue in this district is proper as to defendants
the Morgan Corporations and Rossetti Inc. *See Cold Spring,* 762
F. Supp. 2d at 551–52.  Plaintiff alleges that defendant
Rossetti Inc. is incorporated in and has its principal place of
business in Michigan, and that defendants the Morgan
Corporations are incorporated under the laws of Ohio and have
their principal places of business there.  (*See* FAC ¶¶ 3, 6-7.)
As venue is only proper in a judicial district where the
corporation is incorporated *or* where the corporation has an
established place of business, and defendants are incorporated
elsewhere, plaintiff must adequately plead that defendants have
an established place of business in this judicial district.  *See
TC Heartland*, 137 S.Ct. at 1517-18, 1521.

Plaintiff failed to plausibly allege any facts that
the defendants have established places of business in New York.

> Courts should . . . be careful not to conflate
> showings that may be sufficient for other purposes,
> *e.g.*, personal jurisdiction or the general venue
> statute, with the necessary showing to establish
> proper venue in patent cases.  As the district court
> correctly stated, "the regular and established place
> of business standard requires more than the minimum
> contacts necessary for establishing personal
> jurisdiction or for satisfying the doing business
> standard of the general venue provision, 28 U.S.C. §
> 1391(c)."

*In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017).

Plaintiff's conclusory allegations that "[d]efendants maintained a regular and established place of business in this judicial district, [d]efendants have purposefully directed business to this judicial district for at least several years, and [d]efendants have committed acts of infringement in this judicial district" are insufficient to establish venue. (FAC ¶ 10.)  Rather, plaintiff must show that each defendant that is incorporated outside of New York and thus entitled to challenge venue possesses (1) a physical place of business in the district; (2) that is regular and established; and (3) belongs to [each] defendant.  *See In re ZTE (USA) Inc.*, 890 F.3d at 1014-15 (citing *In re Cray Inc.*, 871 F.3d at 1360).  Plaintiff alleged no facts in the Amended Complaint establishing any of those factors.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue, a court may consider evidence outside the pleadings, regarding proper venue.

*See Allied Dynamics Corp. v. Kennametal, Inc*., 965 F. Supp. 2d
276, 298 (E.D.N.Y. 2013)(concluding that because, "there are
disputed facts relevant to the venue determination in this case,
the Court must hold an evidentiary hearing before resolving the
pending Rule 12(b)(3) motion."). Uni-Systems' Reply Memorandum
argues that the alleged "regular and established place of
business" for Rossetti Inc. and the Morgan Corporations is the
Arthur Ashe Stadium or the Louis Armstrong Stadium. (Omnibus
Reply at 33-37.) Plaintiff alleges insufficient to show that
either site was a regular and established place of business for
the defendants challenging venue.

    The Federal Circuit provided the following three
factors for considering whether a corporation incorporated
outside of a state has a regular and established place of
business in the forum district: "(1) there must be a physical
place in the district; (2) it must be a regular and established
place of business; and (3) it must be the place of the
defendant. If any statutory requirement is not satisfied, venue
is improper under § 1400(b)." *In re Cray*, 871 F.3d at 1360.
Plaintiff, relying on matters beyond the Complaint and FAC cites
to multiple articles and websites to support its assertion that
defendant Morgan Kinetic Structures maintains an office in the
completed stadium and that Rossetti Inc. has touted decades of
service as the USTA's master planner and architect. The cited

articles are insufficient to show that Morgan Kinetic Structures and Rossetti, Inc. maintained a regular and established place of business in this district.  (*See* ECF No. 193*,* Liddell Decl. Ex. A; ECF No. 196, Request for Judicial Notice ("RJN") Exs. C. and D.)  Rossetti, Inc.'s promotion of the Arthur Ashe Stadium Construction site, Morgan's admissions that it conducted business activities at the Arthur Ashe Stadium and Louis Armstrong Stadium construction sites, and plaintiff's arguments regarding Morgan's office at Arthur Ashe Stadium for performing maintenance of the roof are insufficient to establish that the sites or dedicated spaces therein belong to the defendants. (Omnibus Reply at 37-38.)  They show only that defendants provided services on site for the actual owners of the Arthur Ashe and Louis Armstrong Stadiums.

Plaintiff has failed to meet its burden to plausibly allege facts establishing that venue is proper as to Morgan Engineering, Morgan Kinetic Structures, Inc., Morgan Automation, Inc., and Rossetti Inc.  However, as plaintiff has requested the opportunity to conduct limited venue-specific discovery and seeks an evidentiary hearing on venue, the court grants plaintiff limited discovery as to whether these defendants have an established place of business in the Eastern District of New York under the supervision of the magistrate judge assigned to this case.  *Allied Dynamics Corp.*, 965 F. Supp. 2d at 288

(citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004)) (stating that if there are disputed facts relevant to determining venue, the district court may exercise their discretion to determine whether to hold an evidentiary hearing to resolve the dispute).  The motions of the Morgan defendants and Rossetti, Inc. to dismiss for improper venue are denied without prejudice to renew.

## II.  PATENT INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS AND BREACH OF CONTRACT CLAIMS IN THE AMENDED COMPLAINT

### A.   Legal Standard

#### 1.   Leave to Amend

Leave to amend a pleading is typically "freely given" pursuant to Fed. R. Civ. P. 15(a), however, "the trial court [is] required to take into account any prejudice that might result to the party opposing the amendment."  *Ansam Assocs., Inc. v. Cola Petroleum, Ltd*., 760 F.2d 442, 446 (2d Cir. 1985) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31 (1971)) (internal quotation marks omitted) (denying motion to amend filed after the close of discovery and after a motion for summary judgment was filed, on the basis that it would be "especially prejudicial").  Moreover, under this liberal standard, district courts should not deny leave to amend except where as the court finds futility, bad faith, undue delay, or undue prejudice to the opposing party.  *See, e.g.,*

*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d

Cir. 2008); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184,

200 (2d Cir. 2007); *Aetna Cas. & Sur. Co. v Aniero Concrete Co.,

Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005).

    2.   <u>Motion to Dismiss</u>

        In assessing whether the proposed amendments would be

futile, this Court will apply a Rule 12(b)(6) standard in

adjudicating the defendants' arguments in opposition to

plaintiff's Motion to Amend, and in support of defendants'

motions to dismiss the original complaint and the proposed First

Amended Complaint, submitted with plaintiff's Motion to Amend.

At a conference on October 24, 2017, the parties agreed that the

court would simultaneously decide the plaintiff's motion to

amend, defendants' opposition to the amendment, and their motion

to dismiss the underlying complaint. (*See* Oct. 24, 2017 Tr. at

15:9–22.; Motion to Amend; FAC.)

        In determining whether a motion to amend should be

granted, the court may consider the same standards as those

governing the adequacy of a filed pleading. *See Ricciuti v.

N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *Lucente

v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)

(citation omitted) ("An amendment to a pleading is futile if the

proposed claim could not withstand a motion to dismiss pursuant

to Fed.R.Civ.P. 12(b)(6).")

"To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient facts that if accepted as true 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A well-pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 252 (E.D.N.Y. 2016) (citing *Twombly*, 550 U.S. at 555). A complaint providing only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A motion to dismiss "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [to prove a claim]." *Id.* at 556. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court may refer to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in

bringing suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142,

150 (2d Cir. 1993) (internal citations omitted); *see also*

*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 1993)

(internal emphasis and citation omitted) (clarifying that

"reliance on the terms and effect of a document in drafting the

complaint is a necessary prerequisite to the court's

consideration of a document on a dismissal motion; mere notice

of possession is not enough.").


    B.    <u>The Patent Infringement Claims</u>

        1. Counts I and II Against All Defendants
           Regarding Arthur Ashe Stadium and Count III
           Against USTA, Hunt, Rossetti, Morgan and
           <u>Geiger Regarding Armstrong Stadium</u>

Subsection (a) of 35 U.S.C. § 271 governs direct

infringement of patents and provides:

> Except as otherwise provided in this title, whoever
> without authority makes, uses, offers to sell, or
> sells any patented invention, within the United States
> or imports into the United States any patented
> invention during the term of the patent therefor,
> infringes the patent.

*Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926

(2015). "Under this form of liability, a defendant's mental

state is irrelevant. Direct infringement is a strict-liability

offense." *Id.* (citation omitted.) To sufficiently allege

direct infringement of a patent, a party need not plead each

element of the allegedly infringed claim; rather, drawing all reasonable inferences in the light most favorable to the plaintiff, "the plaintiff need only 'nudge' its claim 'across the line from conceivable to plausible.'" *Crypto Research, LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017) (quoting *Iqbal*, 556 U.S. at 680).

The Federal Circuit has acknowledged that a complaint pleading facts supporting the following five factors contained in Form 18, a model patent complaint located in the Appendix to the Federal Rules of Civil Procedure, is likely to fulfill the plausibility requirements, though not all five are required to state a claim for relief:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,* 681 F.3d 1323, 1334 (Fed. Cir. 2012) (citation omitted).

Rossetti, Inc. and Rossetti PC, the Morgan Corporations,[4] Geiger, Hunt, and Hardesty & Hanover argue that

---

[4] Although Rossetti Inc. and the Morgan Corporations seek dismissal for lack of venue, the court analyzes each of the claims and allegations in the Amended Complaint. Further, both Rossetti Inc., and the Morgan Corporations indicated at a status conference on September 21, 2018 that regardless of whether venue is proper in their states of incorporation, they will participate in discovery in the Eastern District of New York if their motions to dismiss are not granted.

the patent infringement claims in Counts I-III of the First
Amended Complaint fail because they rely on bare legal
conclusions rather than alleging sufficient facts in support of
Uni-Systems' claims of infringement.  Accepting as true all of
Uni-Systems' factual allegations, and considering them in the
light most favorable to Uni-Systems, Uni-Systems' pleadings of
direct patent infringement are sufficient, with regard to
certain defendants, to state a claim upon which relief may be
granted and place the parties "on notice of what activity . . .
is being accused of infringement."  *Lifetime Indus., Inc. v.
Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (citation
omitted); *see also In re Bill of Lading*, 681 F.3d at 1340
(citation omitted) (explaining that a court must draw all
reasonable inferences in favor of plaintiff on a motion to
dismiss and, noting that "[n]othing in *Twombly* or its progeny
allows a court to choose among competing inferences as long as
there are sufficient facts alleged to render the non-movant's
asserted inferences plausible.").  Defendants attempt to read
into the pleading requirements an additional requirement that
the claims be likely to succeed — an approach which the Federal
Circuit has rejected as premature at the motion to dismiss
stage.  *See In re Bill of Lading*, 681 F.3d at 1331-32, 1340.

As the Amended Complaint fulfills factors 1,[5] 2[6], 4[7] and 5[8] in the *In re Bill of Lading* test with regards to Claims I, II and III, the analyses of the infringement claims against the individual defendants will focus on whether the Amended Complaint plausibly alleges facts regarding "(3) [ ] that defendant has been infringing the patent by making, selling, and using [the device] embodying the patent." *In re Bill of Lading*, 681 F.3d at 1334 (internal quotation marks and citation omitted).

a.   Rossetti[9]

Uni-Systems plausibly alleges that Rossetti, PC and Rossetti Inc. (collectively "Rossetti") infringed the Retention Mechanism patent at Arthur Ashe Stadium (Count I), infringed the Lateral Release patent at Arthur Ashe Stadium (Count II), and infringed the Lateral Release patent at Louis Armstrong Stadium (Count III).  Rossetti argues that the Amended Complaint consist of legal conclusions and limited factual allegations that are

---

[5] The FAC alleges jurisdiction as to each defendant. (FAC ¶¶ 8-10.)
[6] The FAC states that plaintiff owns the patents infringed upon in Counts I, II and III. (FAC ¶¶ 13-14, 17.)
[7]  The FAC states that in or between May and July 2016, USTA, Hardesty & Hanover, Rossetti, Hunt, Morgan and Geiger were notified of the infringement of plaintiff's Retention Mechanism patent (FAC ¶ 127), and of the plaintiff's Lateral Release patent in May 2016.  (FAC ¶¶ 148, 166)
[8]  The FAC states a claim for an injunction and damages with regards to Counts I, II and III. (FAC ¶¶ at 127-128, 150-151, 168-169.)
[9] In evaluating this claim, the court does not take "judicial notice" of any materials from Rosetti's website as the information appears to be proffered for the truth of the matter asserted on the site. (*See* Omnibus Reply at 46; *see also Braun v. United Recovery Sys., LP,* 14 F. Supp. 3d 159, 169 (S.D.N.Y. 2014).)

insufficient to state a claim upon which relief can be granted.

Uni-Systems alleges that Rossetti P.C., was the lead designer and official project architect and worked with Rossetti Inc. to provide design and architectural services for the Ashe Stadium Retractable Roof and Louis Armstrong Stadium Retractable Roof. (*See* FAC ¶¶ 74, 77, 93, 135, 156.) Uni-Systems alleges that Rossetti and Geiger "reviewed and approved" the roof mechanization work for the Arthur Ashe Stadium that was completed by another defendant. (*Id*. ¶¶ 77, 86-88.)

Uni-Systems further alleges that despite being on notice of their alleged infringement, (*Id*. ¶¶ 102, 125-27, 148, 150, 166, 168), the Rossetti defendants continued to infringe the Retention Mechanism Patent by "making and using the Ashe Retractable Roof and/or controlling or directing one or more Defendants or third parties to make or use the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016," and thereafter constructed the Armstrong Retractable Roof using the infringing design. (*Id*. ¶¶ 112, 169.)

Rossetti argues that the allegations regarding "making" and "using" the Arthur Ashe and Louis Armstrong stadium roofs are legal conclusions, that allegations regarding defendant's titles and roles are not factual or entitled to a presumption of truth, and that "designing or drawing a device

that . . . might infringe a patent does not itself constitute infringement." (*See* ECF No. 187, Rossetti Opposition to the Motion to Amend ("Rossetti Opp'n") at 12 (citations omitted)[10].)

An allegation of a defendant's roles, supported by sufficient facts, can place a defendant on notice of a claim and even be probative of a defendant's specific intent with regard to a finding of inducement. *See Crypto Research*, 236 F. Supp. 3d at 687 *(citing Ricoh Co. v. Quanta Computer Inc.*, 1343 (Fed. Cir. 2008)) ("defendant's 'role as the designer and manufacturer of the [allegedly infringing devices] in question may evidence an intent sufficiently specific to support a finding of inducement.'"). But a mere allegation of title and role, without facts that describe defendants' actions in making, selling or using an infringing patent will not suffice. The mere drafting of designs for the accused retractable roofs at the Arthur Ashe and Louis Armstrong stadiums would be

---

[10] Rossetti cites *Microsoft v. AT&T Corp.,* 550 U.S. 437, 450 (2007) to support the proposition that designing a device that might infringe does not constitute infringement. This is a mischaracterization of the holding in *Microsoft,* which was that software in the abstract does not qualify as a "component" for the purposes of 35 U.S.C. § 271(f). Section 271(f) references one of multiple ways in which a patent can be infringed. Plaintiff pleads infringement under §§ 271 (a), 271(b) and 271(c). The two other cases cited by Rossetti in support of the general proposition that a design alone cannot constitute the "making or using" component of infringement, are similarly inapposite. Regarding *Baut*, the court found that a design depicting an infringing item, standing alone, was insufficient to state a claim for inducing infringement and did not address direct infringement. *See Baut v. Pethick Constr. Co.*, 262 F. Supp. 350, 362-363 (M.D. Pa. 1966). *Sims v. W. Steel Co.*, a 10th Circuit case, also analyzes induced infringement and not direct infringement and held that the transfer of drawings was insufficient proof of inducing infringement absent a showing of intent. 551 F.2d 811, 817 (10th Cir. 1977).

insufficient to sustain a claim that the Rossetti Defendants made, used or sold any patented invention.  Rossetti argues that plaintiff has merely alleged the legal elements of a patent infringement claim under 35 U.S.C (Section 271(a).  Rossetti further asserts that the drawings by the Rossetti defendants are expressions of an idea for a retractable roof design, but do not constitute "use" of any element, or the "making" of a retractable roof system. (ECF No. 187, Rossetti Opp'n at 10.)

Here, however, the allegations of Rossetti's continuing involvement in its role not only as an architect and designer, but also as a reviewer and approver or inspector of the mechanization work at Arthur Ashe and designer of the Louis Armstrong Stadium, combined with the detailed allegations regarding Rossetti's knowledge of infringement adequately state claims against the Rossetti defendants.  *See Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) ("testing is a use of the invention that may infringe under [35 U.S.C.] § 271(a).").

Further, the bare repetition of the elements provided in 35 U.S.C. §271(a), when coupled with Uni-Systems factual allegations, regarding Rossetti's role in designing, reviewing and approving Morgan's design and building services go beyond merely alleging the elements, labels and titles against the Rossetti defendants.  (ECF No. 188, Rossetti Surreply at 5.)

Viewed in the light most favorable to Uni-Systems, Uni-Systems allegations barely state a cognizable claim for direct patent infringement against Rossetti.  Rossetti's motion to dismiss the allegations of direct infringement in Counts I, II and III is therefore denied.

b.   The Morgan Corporations

Uni-Systems again alleges barely sufficient facts to plausibly state a claim for patent infringement against the Morgan Corporations as to Counts I, II, and III of the FAC.  The Morgan Corporations contested venue, but did not substantively dispute the claims brought in the Amended Complaint.  In the FAC, Uni-Systems alleges, *inter alia*, that, "as designer and builder of the Ashe Retractable Roof, Morgan has infringed the Lateral Release and Retention Mechanism patents under 35 U.S.C. § 271(a) by, among other things, offering for sale and selling a design to USTA, Hunt, and Rossetti that practices one or more claims of the [Lateral Release and] Retention Mechanism patent[s]."  (FAC ¶¶ 120, 143, 161.)   Morgan also allegedly sold components of the Ashe Retractable Roof that constituted a material part of the Lateral Release and Retention Mechanism patents with the knowledge that the components were, "were especially adapted for infringement of [each] patent and lacked a substantial non-infringing use." (*Id*. ¶¶ 120-2, 143-46.)

Plaintiff makes similar allegations against the Morgan defendants regarding the Lateral Release Patent and the Morgan defendants use of the patent at Louis Armstrong Stadium, both with respect to Morgan's role as a designer and builder who allegedly sold a design that practices one or more claims of the Lateral Release patent and the sale of component parts specially adapted to infringe and without a substantial non-infringing use. (*Id*. at ¶¶ 161-63.)

Taken together, these facts satisfy prongs three and four of the *In re Bill of Lading* test, "(3) [ ] that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent,'" and, "(4) [ ] that the plaintiff has given the defendant notice of its infringement." 681 F.3d at 1334. The allegation regarding sale of components supports the allegation of patent infringement by selling or offering for sale a design that incorporated claims of the Retention Mechanism patent and the Lateral Release patent. The Morgan Corporations' motion to dismiss the allegations of direct infringement in Counts I, II and III is, therefore, denied.

c. Geiger

Uni-Systems has alleged sufficient facts to state a claim for patent infringement against Geiger as to Counts I, II and III of the Amended Complaint. Uni-Systems alleges that

Geiger, "served as mechanization engineer consultant and structural engineer, prepared performance criteria, developed documentation, drawings, and specifications, and reviewed fabrication and construction of the Ashe Retractable Roof. . . . [and] [was] an engineer of the Armstrong Retractable Roof." (Omnibus Reply at 42 (citing FAC ¶¶ 76, 95, 164).) In that role, Geiger "reviewed and approved" of the mechanization work for the Arthur Ashe Stadium that was conducted by Morgan, another defendant. In its role as an engineer for the Arthur Ashe Retractable Roof, Geiger allegedly "infringed and continues to infringe" the Retention Mechanism patent and the Lateral Release patent "by, among other things, making and using the Ashe Retractable Roof and/or controlling or directing one or more Defendants or third parties to make or use the Ashe Retractable Roof." (FAC ¶¶ 123, 146, 147.) Geiger is further alleged to have engineered the Armstrong Retractable Roof that infringed the Lateral Release patent in the Armstrong Retractable Roof, even after receiving notice of its infringing characteristic. (FAC ¶¶ 165-66, 168.)

Geiger argues that the Amended Complaint fails to set forth any plausible claim of infringement at Arthur Ashe or Louis Armstrong Stadium and that dismissal is proper, because plaintiff's factual allegations are either naked assertions or legal conclusions and not entitled to an assumption truth. (ECF

No. 189, Geiger Opposition to the Motion to Amend ("Geiger
Opp'n") at 9-10.)  Geiger's arguments regarding titles and
labels are unavailing, when combined with plaintiff's other
factual allegations regarding Geiger's actions, including
Geiger's role in designing and periodically reviewing the
fabrication and construction of the allegedly infringing roof
mechanisms.  Geiger relies on *Raffaele v. City of New York*, 144
F. Supp. 3d 365, 372 (E.D.N.Y. 2015), in support of its
arguments regarding titles and labels.  (Geiger Opp'n at 12;
Rossetti Opp'n at 11.)  *Raffaele*, however, did not hold that
pleadings regarding formal or informal titles are not factual
statements or are not entitled to a presumption of truth — the
decision simply stated that, "[a]lthough detailed factual
allegations" are not required, "[a] pleading that offers 'labels
and conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do." *Raffaele*, 144 F. Supp. 3d at 372
(citations omitted).  As plaintiff correctly notes,
"[a]llegations regarding a defendant's title or role are factual
assertions that alone can be sufficient to support an
infringement pleading."  (*See* Omnibus Reply at 44 (citing *LML
Holdings, Inc. v. Pac. Coast Distrib. Inc.*, No. 11-CV-06173,
2012 WL 1965878, at *2 (N.D. Cal. May 30, 2012)); *see also*
*Crypto Research*, 236 F. Supp. 3d at 687 (citing *Ricoh*, 550 F.3d
at 1343).  Where, as here, Geiger's role as a mechanization

engineer is critical to plaintiff's allegation of infringement, it is a relevant fact that supports the allegations of infringement.

Geiger also argues that none of Geiger's alleged acts support claims that Geiger "engineered" the Ashe Retractable Roof. (Geiger Opp'n at 15). The allegations that Geiger was responsible for preparing "performance criteria for the proposed retractable roof panels and mechanisms, as well as documentation illustrative of a retractable roof design that would comply with the performance criteria" that Geiger developed dramatization, drawing, and specifications for use in the bidding process, was involved in the bidding, reviewed the fabrication and construction of the roof mechanism, and "assisted in the engineering development" for the Ashe Retractable Roof more than plausibly allege that Geiger "engineered" the roof." (*See* FAC ¶ 76; Omnibus Reply at 51.) Although Geiger describes the pleadings as speculative and conclusory, the allegations sufficiently put the defendants on notice of the infringement claim. (*Id.*)

Geiger also argues that its design as built does not infringe the Lateral Release Pattern because it has different mechanisms and that a substantive change to the roof design of the Armstrong Stadium precludes finding of infringement. (ECF No. 191, Geiger Surreply to the Motion to Amend ("Geiger

Surreply"), at 14.)  The court declines to adjudicate material factual disputes. [11]  Geiger's submissions are not as focused on the sufficiency of the pleadings, as they are on the substance and merits of plaintiff's factual allegations – which is improper on a motion to dismiss.  *See YETI Coolers, LLC v. RTIC Coolers, LLC*, No. 16-CV-264-RP, 2016 WL 3951223, at *2 (W.D. Tex. July 19, 2016)(denying defendant's motion to dismiss and holding that dismissal was inappropriate where there was a factual dispute as to whether the plaintiff's plausible allegation regarding the defendant's role was accurate). Geiger's motion to dismiss the allegations of direct infringement in Counts I, II and III is therefore denied.

### d.    Hunt

In addition to arguments in support of its motion to dismiss claims against Hunt, in its memorandum of law, "Hunt adopts the arguments of Defendant Geiger Engineers, P.C. ("Geiger") with respect to the . . .  patent infringement claims (Counts I-II) [12] asserted by Uni-Systems."  (ECF No. 195, Hunt

---

[11] Geiger has submitted 126 pages of exhibits to support its assertions of non-infringement. (See ECF No. 190, Exhibits to Geiger Opposition.) The court declines to consider RDX 1, RDX 2, RDX 3, RDX 5, RDX 7, RDX 9, RDX 10, RDX 11, RDX 12 and RDX 13 in support of Geiger's non-infringement arguments as they are outside the pleadings and do not fall within the purview of judicial notice or documents referred to or incorporated into the Amended Complaint.
[12] Hunt withdraws its argument that Count III is premature, as the Louis Armstrong Stadium was substantially completed shortly before the 2018 U.S. Open began on August 28, 2018 and was used for the U.S. Open.  (See ECF No. 262, Defendants' Letter Withdrawing Arguments.)

Opposition to the Motion to Amend ("Hunt Opp'n"), at 9.) The
court finds Hunt's arguments unavailing to the extent they
mirror Geiger's for the same reasons that it denied Geiger's
motion to dismiss. Plaintiff sufficiently alleged that Geiger,
"has been infringing the patent 'by making, selling, and using
[the device] embodying the patent,'" and, "that the plaintiff
has given the defendant notice of its infringement." *In re Bill
of Lading*, 681 F.3d at 1334 (citation omitted).

Plaintiff alleges that, as lead builder of the Arthur
Ashe Retractable Roof, Hunt made and used the Ashe Retractable
Roof, "and/or controll[ed] or direct[ed] one or more Defendants
or third parties to *make or use* the Ashe Retractable Roof, which
was completed, operational, and put into service as of August
2016." (FAC ¶ 114.) Hunt further infringed the Lateral Release
patent under 35 U.S.C. § 271(a) by "making and using the
Armstrong Retractable Roof and/or controlling or directing one
or more Defendants or third parties to make or use the Armstrong
Retractable Roof" despite knowledge of its infringing nature and
"intended to encourage other Defendants' infringement though
their making and using the Armstrong Retractable Roof," which is
now substantially complete and operational. (*See* FAC ¶¶ 102,
125-27, 148-50,158-59, 164, 166, 168; *see also* Defendants'
Letter Withdrawing Arguments.)

Taken together, the facts alleged regarding Hunt's

infringement state a plausible claim for direct patent
infringement.  Hunt's motion to dismiss the allegations of
direct infringement in Counts I, II and III is, therefore,
denied.

e.    Hardesty & Hanover

Plaintiff alleges that,

> [a]s designer and builder of the Ashe Retractable
> Roof, Hardesty & Hanover has infringed and continues
> to infringe the Retention Mechanism patent [and the
> under 35 U.S.C. § 271(a) by, among other things,
> offering for sale and selling a design to USTA, Hunt,
> and Rossetti that practices one or more claims of the
> Retention Mechanism patent. Hardesty & Hanover has
> also infringed and continues to infringe the Retention
> Mechanism patent by making and using the Ashe
> Retractable Roof and/or controlling or directing one
> or more Defendants or third parties to make or use the
> Ashe Retractable Roof, which was completed . . . as of
> August 2016.

(FAC ¶ 117); *see also FieldTurf Int'l, Inc. v. Sprinturf,
Inc.*, 433 F.3d 1366, 1369-70 (Fed. Cir. 2006) ("A bid to supply
a product specified in a RFP is a traditional offer to sell.").
Plaintiff also alleges that defendant Hardesty & Hanover
infringed the Lateral Release patent by engaging in the
activities listed above, because the Arthur Ashe Roof
incorporated both the Lateral Release patent and Retention
Mechanism patent.  (FAC ¶ 140.)  The allegations that Hardesty &
Hanover both sold a design to USTA that practices the Lateral
Release and Retention Mechanism patent and made and used the

Ashe Retractable Roof after receiving notice that it was
infringing plaintiff's patents are sufficient to state a claim
for direct patent infringement.  (*See* FAC ¶¶ 117-20, 125, 127.)
As such, Hardesty & Hanover's motion to dismiss the allegations
of direct infringement Counts I and II is denied.

> ### 2.     Plaintiff's Claims for Induced and Contributory Infringement Are Dismissed in Part

"To state a claim for induced infringement, a
plaintiff must plausibly allege that the defendant: (1) had
knowledge of the patent-in-suit; (2) knew the induced acts were
infringing; and (3) specifically intended to encourage another's
infringement." *Carson Optical*, 202 F. Supp. 3d at 253 (citing
*Commil USA, LLC,* 135 S. Ct. at 1926); *see also* 35 U.S.C. §
271(b) (2010).  As long as these criteria are met, "[A] well-
pleaded complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and that a
recovery is very remote and unlikely." *In re Bill of Lading*,
681 F.3d at 1339 (internal quotation marks and citations
omitted).

As to factor one, knowledge of the patents-in-suit,
"[t]he filing of a federal complaint identifying the patents-in-
suit satisfies the requirement that a plaintiff plead a
defendant's knowledge of the patents-in-suit." *Carson Optical*,

202 F. Supp. 3d at 254 (citing *Smartwater, Ltd. v. Applied DNA Scis., Inc.*, No. 12-CV-5731, 2013 WL 5440599, at *8 (E.D.N.Y. Sept. 27, 2013)) ("recognizing that a defendant's knowledge of the patents prior to the filing of a federal complaint is 'not essential to a claim of induced infringement'"). With regard to knowledge that the induced acts were infringing, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Ricoh*, 550 F.3d at 1342. However, "the plaintiff need not prove that the defendant exercised control over the third party infringer's actions to support a finding of inducement liability." *Trs. of Columbia Univ. v. Roche Diagnostics GmbH*, 272 F. Supp. 2d 90, 104 (D. Mass. 2002) (holding instead that direct or circumstantial evidence of knowingly aiding and abetting infringement was required).

In evaluating specific intent, the third factor, "direct evidence is not required; rather, circumstantial evidence may suffice." *Carson Optical*, 202 F. Supp. 3d at 253 (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)) (internal quotation marks and citation omitted). To plead a claim for inducement, a party must allege specific intent and not merely knowledge. Plaintiff successfully pleaded the first two

elements of a claim for induced infringement by plausibly alleging claims for direct infringement by all defendants, and pleading notice, and knowledge, so the following analysis will evaluate whether plaintiff adequately alleged facts regarding the third factor, specific intent, as to each defendant.

"Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or *instructing how to engage in an infringing use*, show an affirmative intent that the product be used to infringe." (Omnibus reply at 54 (citing *MEMC Elec.*, 420 F.3d at 1379 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005))) (emphasis added).)

To establish contributory infringement, plaintiff must allege sufficient facts to show that a party sold or offered to sell, "a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use."  *See* 35 U.S.C.A. § 271(c) (2010).

a. Rossetti

Plaintiff alleges that "As lead designer and architect
of the Ashe Retractable Roof, Rossetti has induced infringement
. . . . Rossetti knew that the Ashe Retractable Roof it designed
infringed the Retention Mechanism patent, and [ ] specifically
intended to encourage other Defendants' infringement through
their making and using of the Ashe Retractable Roof." (FAC ¶
113.)  Plaintiff makes similar allegations regarding the
Lateral Release patent used in the Arthur Ashe Retractable Roof
and Armstrong Retractable Roof. (*Id*. ¶¶ 135, 157.)  However,
Uni-Systems fails to plead any additional specific factual
allegations beyond Rossetti's knowledge of the patent and notice
of infringement of the Lateral Release patents used in the
Arthur Ashe Retractable Roof and Armstrong Retractable Roof to
support the claim of inducement. (*Id*. ¶¶ 112-113, 135-136, 156-
157.)

Plaintiff urges an interpretation and inference that,
"as architect and engineer at the Louis Armstrong Stadium, it is
more than plausible that Rossetti and Geiger have provided
designs and instructions for making and using the retractable
roof" during the time between the May 2016 notification and the
completion of the Arthur Ashe Stadium in August 2016. (Omnibus
Reply at 51.)  Plaintiff cites to *Baut v. Pethick Const. Co.*,
262 F. Supp. 350, 360 (M.D. Pa. 1966), arguing that submitting

drawings and specifications that incorporate an infringing element can constitute inducement. However, the facts in *Baut* are distinguishable. In *Baut*, a windowmaker attended a meeting for the express purpose of copying a structure's design, was informed later that the structure would infringe a patent if installed, and then attempted to convince the architect to use the infringing design because changing the specifications would delay the job being completed. 262 F. Supp. at 360. Plaintiff alleges no such facts here and although the court may draw all reasonable inferences in favor of plaintiff, an inference of specific intent based on plaintiff's pleadings is unreasonable where the only factual statement regarding specific intent is found in the conclusory allegation that the defendant specifically intended to encourage other defendants' infringement.

Accordingly, the Rossetti defendants' motion to dismiss plaintiff's claim of induced infringement is granted, with leave for plaintiff to replead additional facts to state a claim for inducement that show, by direct or circumstantial evidence, that the Rossetti defendants specifically induced another to infringe plaintiff's patents. *See Superior Indus., LLC v. Thor Global Enters. Ltd.*, 700 F.3d 1287, 1296 (Fed. Cir. 2012) (affirming dismissal of induced infringement claim where complaint fails to allege any facts from which the court could

reasonably infer specific intent to induce infringement and knowledge that it induced acts that caused infringement).

              b.    The Morgan Corporations

Plaintiff alleged sufficient facts to support its claim that the Morgan Corporations contributed to the infringement of plaintiff's Retention Mechanism patent and Lateral Release patent.  Specifically, plaintiff alleged that Morgan offered to sell and sold designs and component parts of the Armstrong Retractable Roof and continued participation in the design and construction of the Armstrong Retractable Roof after being placed on notice that the roof's design infringed plaintiff's patent, as is required under 35 U.S.C. § 271(c). (*See* FAC ¶¶ 122, 144-145,163.)

However, plaintiff has failed to allege sufficient facts to state a claim that the Morgan defendants induced infringement of the relevant patents.  (*See id*. ¶¶ 120-21, 142-43, 161-62.)  The only factual statement regarding specific intent is found in the conclusory allegation that the defendant specifically intended to encourage other defendants' infringement. (*Id*. ¶ 144.)  Plaintiff's claim of inducement against the Morgan defendants is dismissed with leave to replead additional facts to state a claim for inducement that establish, by direct or circumstantial evidence, that the Morgan defendants

specifically intended to induce another to infringe plaintiff's
patents.

c.   Geiger

Plaintiff fails to plead sufficient facts to state a
claim that Geiger induced others to infringe the Retention
Mechanism and Lateral Release patents.  With regards to induced
infringement, plaintiff pleads in Paragraphs 124, 147, and 165
of the Amended Complaint that, "[a]s engineer" Geiger "induced
infringement and continues to induce infringement" of the
Retention Mechanism patent and Lateral Release patents and
alleges that Geiger "specifically intended to encourage other
Defendants' infringement through their making and using" of the
Ashe Retractable Roof and Armstrong Retractable roof.  (*Id.*)

Plaintiff's conclusory statements that Geiger "induced
infringement" and "specifically intended to induce infringement"
are insufficient to state a claim for induced infringement.
Plaintiff argues that "[e]vidence of active steps taken to
encourage direct infringement, such as advertising an infringing
use or *instructing how to engage in an infringing use*, show an
affirmative intent that the product be used to infringe."
(Omnibus Reply at 54 (citing *MEMC Elec.*, 420 F.3d at 1379
(quoting *Metro-Goldwyn-Mayer*, 545 U.S. at 936)) (emphasis
added).)  However, the evidence of active steps for inducement

cited in *MEMC* go beyond the unadorned factual allegations in the Uni-Systems complaints and, in *MEMC*, included making presentations on the infringing product and providing ongoing technical support.  420 F.3d at 1379.  Plaintiff's claim that Geiger induced infringement is dismissed with leave to replead facts supporting specific intent and active steps taken to induce infringement.

### d.    Hunt

Plaintiff sufficiently alleged that Hunt induced and contributed to infringement of plaintiff's Retention Mechanism and Lateral Release patent.  (*See* FAC ¶¶ 115-16, 138-39, 159-60.)  Hunt's specific intent is found in plaintiff's allegations that Hunt conspired with Hardesty & Hanover to utilize plaintiff's patented and trade secret roof technology, (*see id*. ¶¶ 65, 71, 75, 85), Hunt's leadership role in recruiting Rossetti P.C. and Morgan Kinetic and Hunt's role in selecting Morgan Engineering as a subcontractor to work on the Ashe Retractable Roof, (*see id*. ¶¶ 74-75), and Hunt's provision of the specifications for the Ashe Retractable Roof and request for an initial design proposal from Uni-Systems.  (*See id*. ¶79)

Plaintiff's allegations that Hunt sold components of the Ashe Retractable Roof and Armstrong Retractable Roof that constituted material parts of the Lateral Release patent, and

components of the Ashe Retractable Roof that constituted
material parts of the Retention Mechanism patent after being
placed on notice that the designs infringed plaintiff's patents
are sufficient to state a claim for contributing to infringement
under 35 U.S.C. § 271(c). (*See id*. ¶¶ 116, 127, 139, 160.)
Hunt's motion to dismiss the allegations of induced and
contributory infringement in Counts I, II and III is therefore
denied.

e.   Hardesty & Hanover

Plaintiff has failed to state sufficient facts to
support its claim that Hardesty & Hanover induced infringement
of the Retention Mechanism and Lateral Release patents.
Plaintiff's sole allegations regarding specific intent are
statements that Hardesty & Hanover specifically intended to
encourage other defendants' infringement in their making and
using of the Ashe Retractable Roof. (*See* FAC ¶¶ 118, 141.)
Standing alone, these conclusory allegations are insufficient to
state the specific intent required to adequately plead a claim
for induced infringement. Hardesty & Hanover's motion to
dismiss the allegations of induced infringement is granted;
plaintiff is granted leave to replead facts supporting specific
intent and active steps taken to induce infringement. *See
Superior Indus*., 700 F.3d at 1296.

Plaintiff's allegations that Hardesty & Hanover sold components of the Ashe Retractable Roof constituting a material part of the Retention Mechanism and Lateral Release patents knowing that the components were specially adapted to infringe plaintiff's patents and "lacked a substantial non-infringing use" are sufficient to state a claim for contributory infringement given Hardesty & Hanover's role and alleged history with Hunt and plaintiff. (*See* FAC ¶¶ 119, 142.) Hardesty and Hanover's Motion to Dismiss plaintiff's claims of contributory infringement in Counts I and II is therefore denied.

### C. Plaintiff Sufficiently Pleads Misappropriation of Trade Secrets Under Federal and State Law

1. Legal Standard

Trade Secrets are defined under the Defending Trade Secrets Act("DTSA") as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being

> readily ascertainable through proper means
> by, another person who can obtain economic
> value from the disclosure or use of the
> information;

18 U.S.C. § 1839 (3). To succeed on a claim misappropriation of

a trade secret under the DTSA, a plaintiff must show that the

trade secret was: (A) acquired by a person who knows or has

reason to know that the trade secret was acquired by improper

means; or (B) disclosed by another without express or implied

consent. 18 U.S.C. §§ 1839(5)(A), (B). Use or disclosure is

unlawful where the party:

> (i) used improper means to acquire knowledge of
> the trade secret;
> (ii) at the time of disclosure or use, knew or
> had reason to know that the knowledge of the
> trade secret was--
>
> > (I) derived from or through a person who
> > had used improper means to acquire the
> > trade secret; or
> >
> > (II) acquired under circumstances giving
> > rise to a duty to maintain the secrecy
> > of the trade secret or limit the use of
> > the trade secret; or
> >
> > (III) derived from or through a person who
> > owed a duty to the person seeking
> > relief to maintain the secrecy of the
> > trade secret or limit the use of the
> > trade secret . . .

*Id.*

To state a claim for misappropriation of a trade

secret under New York law, a plaintiff must plead, "(1) it

possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) (citations omitted). Under New York law, a trade secret is defined as "any formula, pattern, device[,] or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage [over those] who do not know or use it." *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 258 (E.D.N.Y. 2015) (citation omitted); *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (citation omitted). "To state a claim for misappropriation of trade secrets, a plaintiff must plead facts with sufficient particularity to provide defendants fair notice of what the claim is and the grounds upon which it rests. This requires, at minimum, that the plaintiff generally identify the trade secrets at issue." *Sorias*, 124 F. Supp. 3d at 258 (citations omitted). However, the plaintiff is not required to specify the precise trade secrets to defeat a motion to dismiss. *See id*. (citing *Medtech Prods., Inc. v. Ranir, LLC,* 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008)).

2. Trade Secret Misappropriation

Plaintiff alleges that beginning in or around 2009,

Hardesty & Hanover conspired with Hunt to misappropriate Uni-Systems' trade secrets while contracted as a peer reviewer for the Florida Marlins Ballpark roof and as a maintenance provider for the Cardinals Retractable Roof.  (FAC ¶¶ 32-71, 170-204.) These misappropriations breached Hardesty & Hanover's and Hunt's respective contracts with Uni-Systems at the Arizona Cardinals and Florida Marlins stadiums.  (FAC ¶¶ 205-223.)  "Separate and apart from the improper acquisition of these trade secrets, Hardesty & Hanover and Hunt . . . improperly disclosed and used . . . Uni-Systems' trade secrets for projects for USTA, including the Arthur Ashe Stadium project, which was not completed until August 2016, and the new Louis Armstrong Stadium project. . . ."  (*Id*. ¶ 178.)  Plaintiff alleges that the disclosures associated with the construction of the stadiums were "new and separate uses of Uni-Systems' trade secrets" that occurred after May 11, 2016.  (*Id*. ¶179.)

To determine whether information constitutes a trade secret, New York courts typically consider the following factors, though parties are not required to plead each factor:

> (1) the extent to which the information is known
> outside of the business; (2) the extent to which it is
> known by employees and others involved in the
> business; (3) the extent of measures taken by the
> business to guard the secrecy of the information; (4)
> the value of the information to the business and its
> competitors; (5) the amount of effort or money
> expended by the business in developing the
> information; (6) the ease or difficulty with which the

> information could be properly acquired or duplicated
> by others.

*N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir.

1999) (citation omitted); *accord Inflight Newspapers, Inc. v.*

*Magazines In-Flight, LLC*, 990 F. Supp. 119, 126 (E.D.N.Y. 1997).

These factors are also instructive in analyzing a claim under

the DTSA.

By alleging facts regarding factors three through six,

plaintiff adequately pleads that the information misappropriated

by Hardesty & Hanover and Hunt at the Arizona Cardinals Stadium

and Florida Marlins Stadium constituted trade secrets.  Uni-

Systems alleges that it owned the trade secrets and that they

were made up of confidential and proprietary, "software,

mechanization design principles and criteria, and methods for

implementing the same using engineered solutions, which include

compilations, methods, techniques, processes, procedures,

programs, and codes, and which constitute Uni-Systems' trade

secret."  (FAC ¶¶ 172, 200.)  Uni-Systems alleges that the trade

secrets were developed "through great effort and expense in

terms of manpower, time, and costs" and were a "product or

service used in, or intended for use in, interstate commerce, as

they are used in connection with Uni-Systems' products and

services, which are offered and used across the country."  (*Id*.

¶ 173-74.)  Further, the trade secrets provided, "commercial and

business advantage to Uni-Systems by aiding Uni-Systems in offering reliable, long-lasting, and competitively priced stadium retractable roofs," making them extremely valuable to Uni-Systems. (*Id.* ¶ 197.) Uni-Systems alleges that the trade secrets are critical to Uni-Systems' operation, and if the trade secrets are available to others, they would enable other parties to unfairly compete with Uni-Systems and harm Uni-Systems' business. (*Id.*) Moreover, Uni-Systems alleges that it took reasonable steps to protect the trade secret information by limiting access to the information and requiring customers and clients to sign strict confidentiality agreements that prohibited unauthorized "access, use and disclosure." (*Id.* ¶¶ 175, 198.)

Plaintiff alleges that Hunt and Hardesty & Hanover wrongfully acquired the trade secret information acquired at the Arizona Cardinals' and Florida Marlins' stadiums and participated in unauthorized use of the trade secrets in bad faith, including using the information to bid against Uni-Systems for projects. (FAC ¶¶ 22, 49, 178, 192-204.) Specifically, the defendants used Uni-System's trade secrets and infringed its patents to design other retractable roofs, including at the Arthur Ashe Stadium and Louis Armstrong Stadium. (*Id.* ¶¶ 22, 82, 178.) Taken together these allegations are sufficient to state a claim for misappropriation

of trade secrets.

Defendants Hardesty & Hanover and Hunt move to dismiss plaintiff's trade secret claims on four grounds.  First, defendants argue that plaintiff's alleged trade secrets are not secret because they were disclosed without sufficient protections to preserve their secrecy.  (Hunt Opp'n at 12; ECF No. 204-1, Hardesty & Hanover Opposition to the Motion to Amend ("Hardesty Opp'n") at 20-25.)  Second, they argue that the alleged trade secrets are not secret because they can be derived from a review of the plans, the as-built roof, or by reverse engineering.  (Hunt Opp'n at 12.)  Third, they allege that trade secrets claims are not pleaded with sufficient specificity and the Amended Complaint does not plead sufficient facts for misappropriation.  (Hunt Opp'n at 12; Hardesty Opp'n at 17.) Finally, they claim that the misappropriation claim is time-barred. (Hunt Opp'n at 28; Hardesty & Hanover Surreply to the Motion to Amend ("Hardesty Surreply") at 14-15.)

> a.    Plaintiff Sufficiently Pleads Secrecy of the
>       Alleged Trade Secrets

Hunt argues that Uni-Systems' free disclosure of the allegedly misappropriated drawings and specifications to third parties without protection negated any secrecy.  (Hunt Opp'n at 12-14.)  To the extent the information was not included in the drawings and specifications, Hunt argues that Uni-Systems

licensed Hunt to use the information - negating any impropriety. (*See* Subcontract at § 35.10.)   Hunt also argues that the Subcontract warranted that "[t]itle to all parts supplied by [Uni-Systems] will transfer ownership to Hunt upon receipt of full payment by [Uni-Systems]," which included title to "the PC based operator interface hardware and software." (*See id.* (citing ECF No. 135-1 (Sealed) at 69, 86, 89 (Subcontract Attachment III(C)(2) at §§ V(B), VIII(A)).)   Hunt argues that this same type of information was provided to the architect of record for the Marlins Ballpark project as part of the process for acquiring a building permit and was provided to Hardesty & Hanover prior to plaintiff entering a confidentiality agreement with the architect or Hardesty & Hanover.   (Hunt Opp'n at 11 (citing FAC ¶¶ 42, 44, 50).)

Hardesty & Hanover similarly argues that the Arizona Cardinals Stadium roof and software are not Uni-Systems' trade secrets, and that their claim is precluded as a matter of law due to, "the unambiguous terms of the Subcontract under which Uni-Systems sold that roof and software to the Arizona Cardinals." (Hardesty Opp'n at 8-10.)   Hardesty & Hanover argues that because the subcontract gives the Arizona Cardinals full control of the roof and software, "[t]hey can [and do] disclose or sell, and/or hire anyone to maintain, modify, or even just look at, the roof and software as they wish, at any time."   (*Id.*

51

at 8.)  Further, Hunt argues that Uni-Systems gave Hardesty &

Hanover access to the "trade secret" information during Hardesty

& Hanover's peer review of the Marlins Retractable Roof for

months before executing a confidentiality agreement.  (Hunt

Opp'n at 21 (citing FAC ¶¶ 40-50).)

Both Hardesty & Hanover and Hunt ask the court to

review the terms of the relevant Subcontract governing the peer

review of the Arizona Cardinals stadium roof to ascertain

whether plaintiff protected its trade secrets sufficiently to

state a claim that the trade secrets were, in fact, secret.  The

court finds that it is proper to consider the Subcontract[13] as

plaintiff relies on it in the Amended Complaint, which

incorporates it by reference at paragraphs 206-214, and neither

party objects to the authenticity of the cited portions of the

Subcontract.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147,

152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am.

Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam))

("[T]he complaint is deemed to include any written instrument

attached to it as an exhibit or any statements or documents

incorporated in it by reference."); *cf. DiFolco v. MSNBC Cable

L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (holding that where a

---

[13]  Citations to the Subcontract refer to that copy of the subcontract which
is attached to Hunt's Mot. to File Under Seal, Oct. 11, 2017, as Ex. A, ECF
No. 135-1.  Hunt's Motion to seal was granted by the court on November 3,
2017 Order (ECF No. 166).

complaint relies on the terms or effect of a document, even if the document is not incorporated by reference, the document is considered integral to the complaint and the court may consider it).

The plain language of the Subcontract contradicts defendants' claims that free access was provided to the Cardinals Retractable Roof and Uni-Systems' trade secrets.

Section 35.10 of the subcontract provides, in relevant part:

> 35.10 Ownership of Documents: Drawings, specifications and other documents and electronic data furnished by [Uni-Systems] in connection with this Subcontract, including the detailed drawings and as-built drawings to be prepared by [Uni-Systems] hereunder are instruments of service. *[Uni-Systems] shall retain all common law, statutory and other reserved rights, including copyright in those instruments of service furnished by [Uni-Systems]. Drawings, specifications, other documents and electronic data are furnished by [Uni- Systems] for use solely with respect to the Project.* Hunt and Owner shall be permitted to retain copies, including reproducible copies, of the drawings, specifications and all other documents including electronic data furnished by [Uni-Systems]for information and reference in connection with the Project. *All drawings, specifications and other documents, including working papers, prepared or developed by [Uni-Systems] under this Subcontract are considered to be the 'Project Documents'.* [Uni-Systems] hereby conveys and assigns to Hunt and Owner a non-exclusive license in such 'Project Documents' not only for the completion of the Project, but also with respect to any maintenance, repair, reconstruction, replacement, extension or modification of the Project; provided, however, Hunt and Owner shall indemnify, defend and hold [Uni-Systems] harmless from and against any and all loss, claim, damage, injury, suit or expense, including reasonable

> attorney fees, that arise out of or relate to any such
> use of such Project Documents. *Notwithstanding the*
> *foregoing, Hunt and Owner shall not use any of the*
> *Project Documents on any other projects*.  This Section
> 35.10 shall survive the completion, suspension or
> termination of this Subcontract.

(ECF No. 135-1 at 49, Sealed Subcontract § 35.10 (emphasis

added).)  As explained below, the quoted language, which

restricts the use of "*All drawings, specifications and other*

*documents, including working papers, prepared or developed by*

*[Uni-Systems]*" for use only on the project establishes the

limitations on the use of and protection of plaintiff's trade

secrets, and directly contradicts defendants' arguments that the

above quoted section authorizes unrestricted use of Uni-Systems'

trade secrets as it restricts the use of the information to the

Cardinal's retractable roof.  (Hardesty Opp. at 21-24.)

Although defendants emphasize that the provision does not

mandate absolute secrecy, (*id*.), only "sufficient secrecy" is

necessary, such that, "except by use of improper means, there

would be difficulty in acquiring the information."  *Telerate*

*Sys., Inc. v. Caro*, 689 F. Supp. 221, 232 (S.D.N.Y. 1988)

(citing *Q-Co Indus., Inc. v. Hoffman*, 625 F. Supp. 608, 617

(S.D.N.Y. 1985)) (internal quotation marks omitted); *see also*

*Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D.

Pa. 2018) (holding that allegations that defendants

misappropriated trade secrets and plaintiff took reasonable

steps to protect those trade secrets are sufficient to state a claim for misappropriation under the DTSA). Hardesty & Hanover's and Hunt's contentions regarding the free disclosure of Uni-System's alleged trade secrets are contradicted by the allegations in the Amended Complaint, and are unsupported by the terms of the Subcontract.

Further, plaintiff has adequately alleged that it took reasonable steps to protect its confidential and trade-secret information at the Marlins' stadium. (FAC ¶¶ 46-51 (alleging plaintiff's efforts to protect its trade secrets and Hardesty & Hanover's attempts to evade confidentiality provisions and eventual agreement).) Plaintiff alleged that Hardesty & Hanover agreed to the following confidentiality provisions governing its use and treatment of Proprietary Information disclosed as party of the peer review process:

> (a) Hardesty & Hanover recognized and acknowledged the competitive value and confidential nature of the Proprietary Information, as well as the irreparable injury that UniSystems would suffer if any Proprietary Information was disclosed to or used by Hardesty & Hanover or anyone else. Hardesty & Hanover further acknowledged that Uni-Systems would not have disclosed any Proprietary Information to it nor agreed to participate in the peer review unless Hardesty & Hanover agreed to the terms and conditions in the Confidentiality Agreement.
> (b) Hardesty & Hanover agreed that the Proprietary Information would be used solely for the purpose of conducting the peer review and for no other purpose. Hardesty & Hanover further promised never to use or disclose any Proprietary Information for any other purpose without Uni-Systems' prior written consent.

> (c) On completion of the peer review, Hardesty &
> Hanover would redeliver to the Florida Marlins all
> documents containing Proprietary Information and
> destroy all analyses, compilations, studies and other
> material prepared by Hardesty & Hanover that were
> based on or that contained Uni-Systems' Propriety
> Information.
> (d) Hardesty & Hanover agreed that money damages would
> not be a sufficient remedy for breach of the
> Confidentiality Agreement and that, in addition to all
> other remedies, Uni-Systems would be entitled to
> specific performance, injunctive relief, or other
> equitable relief. Hardesty & Hanover further agreed to
> reimburse Uni-Systems for all costs and expenses,
> including reasonable attorneys' fees, incurred in
> enforcing the Confidentiality Agreement.

(Id. ¶ 51.)

> b.   Uni-System's Sale of the Cardinals
>      Retractable Roof Does Not Preclude Its Claim
>      for Misappropriation of Trade Secrets

Defendants' arguments regarding the sale of the roof
are similarly unavailing.  Nowhere in the Amended Complaint does
Uni-Systems allege that it sold its confidential information
regarding the entire roof to the Arizona Cardinals or that it
sold its full portfolio of trade secrets with the roof.  Even if
the roof and accompanying trade secrets were sold to the Arizona
Cardinals, plaintiff's claims for misappropriation of trade
secrets would not be dismissed.  (*See* Hardesty Surreply at 7-8.)
Plaintiff cites *Lehman v. Dow Jones & Co.*, 783 F.2d 285 (2d Cir.
1986) for the proposition that information is not trade secret
if, "the information itself is the product that the plaintiff is

selling." (Hunt Opp'n at 19.) However, *Lehman* does not control here. In *Lehman*, the Second Circuit found that where an attorney worked as a "finder" for merger opportunities, he could not claim his analyses were trade secret because the alleged trade secret information was in the analyses which he sold and when he sold those analyses to clients, the information was no longer secret. *See* 783 F.2d at 298. *Archie MD, Inc. v. Elsevier, Inc.*, relies on a similar proposition, as the plaintiffs' 3-D animations were both the trade secrets and the product sold. No. 16-cv-6614 , 2017 WL 3421167, at *12 (S.D.N.Y. Mar. 13, 2017).

The proposition that sale of an item invalidates all trade secrets used in its development and operation is unsupported, unless the item itself is the embodiment of the trade secret. *See, e.g.*, *Q-Co Indus., Inc. v. Hoffman*, 625 F. Supp. 608, 617 (S.D.N.Y. 1985) (citation omitted) ("Computer software, or programs, are clearly protect[a]ble under the rubric of trade secrets."); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 294 (D. Del. 1985) ("[T]he Company possesses trade secrets which have been carefully safeguarded and which are extremely valuable. It is also evident that any disclosure of those trade secrets would be harmful to the Company.").

Defendants' argument that the trade secret information

is visible to the public and could be reversed-engineered is also unavailing and is premature in deciding defendants' motions to dismiss.  Although the Cardinals Retractable Roof and Marlins Retractable Roof, which incorporate elements of the Retention Mechanism patent and Lateral Release patent may be visible to the public, plaintiff alleges the trade secrets, which involve methods, techniques, and specifications, are not.  Further, reverse engineering is a defense to misappropriation, whereby defendants would bear the burden of proving reverse engineering. *See* 18 U.S.C. § 1839(6)(B); *see also Telerate*, 689 F. Supp. at 232-33 ("The *possibility* of discovery by 'fair and honest methods' does not preclude the finding of a trade secret. . . . Accordingly, the term 'reverse engineering' is not a talisman that may immunize the theft of trade secrets. The relevant inquiry remains whether the means used to obtain the alleged trade secret, including reverse engineering, were proper.").

Hardesty & Hanover further argues that the Amended Complaint concedes that plaintiff's claimed trade secrets can be reverse engineered by selectively and misleadingly quoting from the Amended Complaint.  (See Hardesty Opp. at 5-6(citing FAC ¶ 68 (emphasis added) ("Indeed, the FAC itself alleges that Hardesty acquired Uni-Systems' trade secrets through an "*inspection* of the retractable roof mechanization and electrical systems.").)   This argument mischaracterizes the plain language

of the Amended Complaint, which states at Paragraph 68:

> On information and belief, during the period in which
> Hardesty & Hanover handled the maintenance of the
> Cardinals Retractable Roof, Hardesty & Hanover
> accessed Uni-Systems' confidential information and
> improperly and unlawfully exploited this information
> to develop offerings substantially similar to Uni-
> Systems' products and services. Indeed, the service
> agreement between Manager and Hardesty & Hanover was
> not for maintenance per se, but rather for a self-
> serving inspection of the retractable roof
> mechanization and electrical systems.

(FAC ¶ 68.)  Plaintiff alleges that Hardesty & Hanover accessed

confidential information and nowhere does the FAC state that an

inspection of the retractable roof mechanisms and electrical

systems stopped at a visual inspection of the roof itself.

>            c.    Plaintiff Sufficiently Pleads Allegations of
>                  Misappropriation of Trade Secrets Against
>                  Hunt

Hunt also moves to dismiss on the grounds that

plaintiff failed to make "any allegations of misappropriation by

Hunt" or allege plausible facts supporting an agreement between

Hunt and Hardesty & Hanover.  (Hunt Opp'n At 9.)  The FAC

alleges that Hunt "orchestrated" and "encouraged and

facilitated" the acquisition of the trade secrets without Uni-

Systems consent and alleges that both Hardesty & Hanover and

Hunt have disclosed and used Uni-Systems trade secrets for the

Arthur Ashe Stadium project and the Louis Armstrong stadium

project. (*See* FAC ¶¶ 85, 177-179.)  These allegations are more

than sufficient to allege that Hunt was a participant, if not the leader in a coordinated effort to misappropriate plaintiff's trade secrets.

> d. Plaintiff Sufficiently Pleads That Its Trade Secrets Were Obtained by Improper Means

Hunt argues that Uni-Systems failed to allege that the trade secrets were obtained by improper means, (Hunt Opp'n at 12), and both Hunt and Hardesty & Hanover assert that the Amended Complaint is overly speculative and states insufficient facts to support a claim for trade secret misappropriation. As explained above, the court finds that Uni-Systems adequately pleaded that it owned trade secrets where it alleged ownership of software, mechanization principles and implementation methods, although it did not provide a description of the specific trade secrets at issue. *See Sorias*, 124 F. Supp. 3d at 259 (citations and internal quotation marks omitted) ("The Court recognizes that [plaintiff], for the most part, do[es] not specify the particular trade secrets at issue in this case, but instead categorizes them generally as data and designs of a specific phone charger with horizontally folding A/C prongs designed by [plaintiff] . . . . Further specificity, however, is not required."). Further, Uni-Systems' provision of nine categories of alleged trade secrets is more than sufficient to

plead ownership of trade secrets and its extensive allegations

of Hardesty & Hanover's and Hunt's scheme are sufficient to

infer or plainly plead improper means.  (FAC ¶¶ 22, 67- 71.)

       3.    <u>Uni-Systems' Trade Secret Claims Are Not Time</u>
             <u>Barred By the DTSA or New York Statute of</u>
             <u>Limitations</u>

"Dismissal at the pleading stage on statute-of-

limitations grounds ordinarily is improper unless it is

'apparent from the face of the complaint that the claim is time-

barred.'" *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 985

(Fed. Cir. 2014) (citations omitted). "[T]o approve dismissal on

timeliness grounds, [the court] would have to conclude that

[plaintiff's] complaint alleges facts making it apparent that

[plaintiff] discovered, or 'by the exercise of reasonable

diligence should have ... discovered,' the alleged

misappropriations at least three years before [the statute of

limitations ran]."  *Id*. (citations omitted).

Under the DTSA, a civil action must be brought no

later than three years after the misappropriation "is discovered

or by the exercise of reasonable diligence should have been

discovered." 18 U.S.C. § 1836(d). Misappropriation is defined as

(A) acquisition of a trade secret "by improper means" or (B)

"disclosure or use of a trade secret of another without express

or implied consent" by one who either used "improper means" or

61

"at the time of disclosure or use," had reasons to know it was acquired by "improper means."  18 U.S.C. § 1839(5).  Thus, the statute of limitations began to run when Plaintiff knew or should have known that the alleged trade secrets were wrongfully acquired, disclosed, or used.  *See id.*

Under New York law, a claim for misappropriation of trade secrets is also subject to a three-year statute of limitations. *See* N.Y. C.P.L.R. 214(4); *see also CSFB HOLT LLC v. Collins Stewart Ltd.*, No. 02 CIV. 3069(LBS), 2004 WL 1794499, at *8 (S.D.N.Y. Aug. 10, 2004).

> [w]hen a trade secret misappropriation claim accrues depends on what the party alleged to have committed the misappropriation did with the information. *If a party misappropriates and publicly discloses a trade secret, the claim accrues upon disclosure.  If, however, the party keeps the secret confidential yet makes use of it to his own commercial advantage, each successive use constitutes a new actionable tort for purposes of the statute of limitations.*

*Id.* (citation omitted) (emphasis added).

Plaintiff pleaded that it discovered the trade secrets were misappropriated in 2015, when it received drawings for the Arthur Ashe Stadium Retractable Roof that incorporated plaintiff's trade secret information.   (FAC ¶ 82.)  Defendants' argument that plaintiff should have known the trade secrets would be acquired in 2009, when Hardesty & Hanover began maintaining the Arizona Cardinals Retractable Roof is unavailing.  (*See* Hunt Opp. at 30 (citing FAC at ¶¶ 68-69

("[D]uring the period in which Hardesty & Hanover handled the maintenance of the Cardinals Retractable Roof, Hardesty & Hanover accessed Uni-Systems' confidential information and improperly and unlawfully exploited this information to develop offerings substantially similar to Uni-Systems' products and services")).)  Plaintiff has alleged sufficient plausible facts that Hardest & Hanover, a contractor tasked with maintaining plaintiff's retractable roof, and charged with keeping plaintiff's trade secrets confidential had disregarded its contractual obligations limiting use of those trade secrets and retained the information for future improper use until said improper use occurred.  Plaintiff also alleged that it discovered that its trade secrets had been obtained and used in violation of the law in the summer of 2015 when plaintiff first reviewed plans or the Arthur Ashe Retractable Roof.  (FAC ¶ 82.) As such, plaintiff's claim is timely both under the DTSA and state law.  *See ABB Turbo Sys. AG*, 774 F.3d at 985.

The court has considered all of the defendants' arguments supporting dismissal of Count IV and V, which rely on prematurely raised factual disputes and distinguishable or non-binding authority.  Consequently, defendants' contentions regarding statute of limitations are rejected. *Sorias*, 124 F. Supp. 3d at 259 (citing *Medtech Prods.,* 596 F.Supp.2d at 790) (emphasis in original) (denying motion to dismiss and holding

"[t]hese allegations make [Plaintiff's] claim for trade secret misappropriation . . . *plausible* . . . . [t]he question of whether it will ultimately be successful cannot [, and need not,] be answered at this stage of the case."). Uni-Systems pleadings adequately state a claim for misappropriation of trade secrets under the DTSA and New York law and Hunt and Hardesty & Hanover's motions to dismiss the misappropriation claims are denied.

### D. Uni-Systems Has Not Stated an Independent Claim for Unfair Competition

Plaintiff's unfair competition claim fails to state a cause of action as it fails to allege tortious conduct separate from its claim of misappropriation of trade secrets. A claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action. *See Abernathy-Thomas Eng'g Co. v Pall Corp.*, 103 F. Supp. 2d 582, 599-600 (E.D.N.Y. 2000) (citations omitted) (treating unfair competition claims based on trade secret misappropriation as a single cause of action); *Carson Optical*, 202 F. Supp. 3d at 267-69 (dismissing an unfair competition claim that failed to state an independent cause of action under New York law); *Sorias,* 124 F. Supp. 3d at 262 (citation omitted) ("[P]laintiff['s] allegations of defendants' bad faith premised on the unlawful copying, misappropriating, knocking off, and

stealing of [plaintiffs'] patented designs are insufficient to transform the nature of these claims from patent infringement to an independent common law claim of unfair competition.").

Uni-Systems' claim for unfair competition is premised on the same allegations as its misappropriation of trade secrets claim and fails to plead any additional conduct. (FAC ¶¶196-204.) As such plaintiff's claim is duplicative and is dismissed without prejudice. (*Id.*)

**E.    The Breach of Contract Claims Are Sufficiently Pleaded**

       1.    The Amended Complaint States a Claim for Breach
            of the Cardinals Retractable Roof Subcontract
            Between Hunt and Uni-Systems

Under Arizona law, "[a] breach of contract claim contains three elements: (1) the existence of a contract, (2) its breach, and (3) resulting damages." [14] *Danial v. Langenbach*, No. 12 CV 2983, 2014 WL 5169389, at *9 (S.D.N.Y. Oct. 14, 2014) (citing *Taylor v. Nair,* 13-CV-01982, 2014 WL 2639656, at *2 (D. AZ. June 13, 2014). Uni-Systems' claim that Hunt violated the Subcontract between Uni-Systems and Hunt for construction of the Cardinals Retractable Roof, sufficiently pleads breach of contract. (*See* FAC ¶¶ 33, 60-75, 205-214 (alleging the

---

[14] The court applies Arizona law to plaintiff's breach of contract claim pursuant to the Subcontract's choice of law provision. (See ECF No. 135-1 at 47 ("34.1 Choice of Law: This Subcontract shall be governed by and construed in accordance with the laws of the State in which the Project is located.")) As the Arizona Cardinals Stadium is located in Arizona, the court applies Arizona law.

undisputed existence of the Subcontract, a breach of the Subcontract, and damages).)  Hunt's arguments that, "Uni-Systems. . . has not satisfied the preconditions required under the contract, nor has it alleged any factual basis for this claim" and that "Uni-Systems' trade secret, breach of contract, and unfair competition claims are all time-barred" fail. (Hunt Opp'n at 9.)

Hunt and Hardesty & Hanover do not contest the validity of the agreements on which the breach of contract claims in the First Amended Complaint are premised.  They argue, however, that, "Uni-Systems cannot plead that Hunt breached the Subcontract because it has not satisfied the preconditions required under the contract, nor has it alleged any factual basis for this claim" and that "Uni-Systems' trade secret, breach of contract, and unfair competition claims are all time-barred." (Hunt Opp'n At 9.)

> a.   Plaintiff's Breach of Contract Claims Are
>      Not Precluded by the Preconditions in § 34.2
>      of the Subcontract

Hunt cites to § 34.2 of the Subcontract to establish that "as a condition precedent to initiating any court proceeding," Uni-Systems was obligated to submit a claim to Hunt in writing if a dispute arose in relation to the Subcontract. (*See* Hunt Br. at 27-28 (citing ECF No. 135-1 at 49, Subcontract

§ 34.2). Hunt's reliance on § 34.2 is misplaced. The Subcontract does not mandate post-completion survival of contractual terms without explicit survival provisions, except where both parties desire to be bound or where enforcement of the provision is a necessity. (*See* ECF No. 135-1 at 45, Subcontract § 35.13 ("35.13 Survivability: It is the intent of the parties that all such sections which expressly state or, by necessity or by the parties' intent, should be so, shall survive termination of this Subcontract.").) Unlike other provisions intended to survive completion of the contract, (*See* Subcontract § 35.10), § 34.2 of the Subcontract contains no expressly stated survivability provision. By virtue of filing the Complaint and Amended Complaint without subjecting itself to the process established in § 34.2 of the Subcontract, Uni-Systems has evinced an intent not to be bound by the provision, and Hunt has made no arguments as to the necessity of the provision's survival to the execution or enforcement of the contract. As such, § 34.2 of the Subcontract does not preclude the plaintiff's breach of contract claim.

b. Plaintiff Sufficiently Pleads a Factual Basis for the Alleged Breach of Contract

Hunt argues that plaintiff failed to allege a factual basis for the alleged breach of contract. Plaintiff's

allegations are not, as Hunt argues, that Hunt breached the contract by revealing information regarding the Cardinals Retractable Roof to Hardesty & Hanover to maintain the roof. (Hunt Opp'n at 28.)  Rather, plaintiff argues Hunt breached the parties' express agreement to maintain the confidentiality of the terms of the Subcontract and the express provision of the Subcontract by revealing to or sharing the terms or conditions of the subcontract with Hardesty & Hanover and/or other third parties and by revealing confidential information " including but not limited to the confidential design parameters for the Cardinals Retractable Roof and other drawings, specifications, working papers, and documents prepared or developed by Uni-Systems in connection with the Subcontract . . . . for use in connection with other stadium retractable roof projects, including the Ashe Retractable Roof and the Armstrong Retractable Roof." (*See* FAC ¶¶ 207-212.)  This sufficiently pleads the two elements of a breach of contract claim under Arizona law as it alleges "(1) the existence of a contract, (2) its breach, and (3) resulting damages." *Danial*, 2014 WL 5169389, at *9.

> c.  The Breach of Contract Action is Not Time-Barred

Hunt argues that Uni-Systems' breach of contract claim

is time-barred under Arizona's eight-year statute of repose for

"[a]ctions involving development of real property

design, engineering and construction of improvements." *See* Ariz.

Rev. Stat. Ann. § 12-552.  However, it is unclear whether the

statute applies here.  The purpose of  A.R.S. § 12-552 is to

establish "a substantive right limiting the 'indeterminable

period of liability exposure' faced by those engaged in

development and construction activities traditionally." *City of

Phoenix v. Glenayre Elecs., Inc.*, 393 P.3d 919, 923 (Ariz. 2017)

(citation omitted); *see also Albano v. Shea Homes Ltd. P'ship*,

254 P.3d 360, 365 (Ariz. 2011) (citation omitted) (stating that

the purpose of the statute of repose was to "limit the 'time

period during which action may be brought against those engaged

in the development or construction of real property and activity

related to the construction of real property.'").  A claim for a

breach of a confidentiality provision does not appear to fall

within traditional construction activities related to the

development and construction of real property.

Arizona's general limitations provision A.R.S. § 12-

550, which the court finds applicable here, provides that

"[a]ctions other than for recovery of real property for which no

limitation is otherwise prescribed shall be brought within four

years after the cause of action accrues, and not afterward."

Ariz. Rev. Stat. Ann. §12-550. The Amended Complaint plausibly

alleges that the claim accrued within the statutory period.  The

alleged breach of the contractual provision took place when Hunt

disclosed plaintiff's confidential information for use in

developing the Arthur Ashe Stadium Retractable Roof and

Armstrong Stadium Roof, a fact plaintiff first discovered when

it reviewed drawings in 2015 depicting Hunt's use of its

patented technologies. (*See* FAC ¶¶ 82, 212.)  As such, there is

nothing on the face of the Amended Complaint that establishes

that the breach of contract claim against Hunt in Count VII is

time barred.  Dismissal based on the statute of limitations

defense is therefore improper and Hunt's motion to dismiss Count

VII is denied.  *See ABB Turbo Sys. AG*, 774 F.3d at 985 (citation

omitted).

      2.    Breach of Contract Based on Hardesty & Hanover's
           Alleged Breach of the Confidentiality Agreement
           for the Florida Marlins Ballpark Peer Review

In Count VIII of the proposed Amended Complaint, Uni-

Systems alleges that Hardesty & Hanover breached a

confidentiality agreement signed in February of 2010 (the

"Confidentiality Agreement"), in connection with the Florida

Marlins Ballpark peer review by using, disclosing and/or failing

to redeliver or destroy documents containing allegedly

"Proprietary Information."  (*See* FAC ¶¶ 40-51, 215-223.)

        d.    Plaintiff Pleads Sufficient Facts to State a
              Claim for Breach of Contract Under Florida
              Law

"Under Florida law, the elements of a breach of

contract action are: (1) a valid contract; (2) a material

breach; and (3) damages." *Anwar v. Fairfield Greenwich

Ltd.*, 831 F. Supp. 2d 787, 794 (S.D.N.Y. 2011), *aff'd sub

nom. Pujals v. Standard Chartered Bank*, 533 F. App'x 7 (2d

Cir. 2013) (quoting *Beck v. Lazard Freres & Co.*, 175 F.3d

913, 914 (11th Cir. 1999)) (internal quotation marks

omitted).[15]  Hardesty & Hanover argues that the allegation

in Count VIII lacks requisite specificity about what

"Proprietary Information" defendant "improperly disclosed,

failed to redeliver/destroy, and/or used."  (Hardesty

Surreply at 13.)  Hardesty & Hanover also argues that

plaintiff failed to allege actual disclosure in breach of

the Confidentiality Agreement, as it only states that

---

[15] "A federal court sitting in diversity must apply the choice of law rules of
the forum state." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d
1531, 1538-39 (2d Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487, 496-97 (1941)).  New York is the forum state, and in contract
cases, New York courts apply a "center of gravity" or "grouping of contracts"
approach in determining which body of substantive law governs. *Id.* at 1539
(citation omitted).  "Under this approach, courts may consider a spectrum of
significant contacts, including the place of contracting, the places of
negotiation and performance, the location of the subject matter, and the
domicile or place of business of the contracting parties." *Id.* (quoting
*Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1030 (2d Cir. 1996))
(internal citations omitted).  The Confidentiality Agreement was entered into
in connection with the peer review of a retractable roof at the Florida
Marlins Ballpark in Miami, Florida.  Additionally, plaintiff and Hardesty &
Hanover apply Florida law to Count VII of the FAC, the breach of contract
claim.  (See Hardesty Opp. at 29; Omnibus Reply at 95.)  As such, the court
applies Florida law to the breach of contract claim in Count VIII.

Hardesty & Hanover "agreed to disclose" the proprietary information. (*Id.*) In support of its argument, defendant cites to *American Registry, LLC v. Hanaw*, No, 2:13-cv-352-FtM-29UAM, 2013 WL 6332971, at *2 (M.D. Fla. Dec. 5, 2013). *American Registry* is easily distinguishable as Uni-Systems alleges more facts and provides more context supporting its claim that defendant improperly used and disclosed plaintiff's proprietary information, including facts regarding Hardesty & Hanover's coordination with Hunt to obtain plaintiff's trade secrets through the Florida Marlins Ballpark peer review. (*See e.g.* FAC ¶¶ 31-71.) Further, the Amended Complaint includes an allegation of disclosure. (*See* FAC ¶ 220.) Accepting the alleged facts as true, construing every reasonable inference in plaintiff's favor, and viewing the Amended Complaint as a whole, plaintiff has alleged that Hardesty & Hanover's disclosure and use of plaintiff's proprietary information breached the Confidentiality Agreement. (*See id.* ¶¶ 32, 33, 41-51, 215-223.)

> e.  Plaintiff's Breach of Contract Claim in Connection With the Florida Marlins Ballpark Peer Review Is Not Time-Barred

Under Florida law, an action for breach of contract must be brought within five years. *See* Fla. Stat. Ann.

95.11(2)(b).  Hardesty & Hanover argues that the breach of contract claim in Count VIII is barred by Florida's five-year statute of limitations as defendant could have improperly acquired the relevant proprietary information in 2010.

Under Florida law, a cause of action for breach of contract accrues when the party bringing the action suffers damages.  *See Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1092 (Fla. Dist. Ct. App. 2014) ("A cause of action accrues when the last element constituting the cause of action occurs.").  Further, "where an obligation is continuing in nature, a party's ongoing nonperformance constitute[s] a continuing breach while the contract remain[s] in effect."  *Id*. at 1095 (citation and internal quotation marks omitted).

Hardesty & Hanover's arguments that plaintiff's claims in connection with the Confidentiality Agreement are time barred ignore the continuing nature of its contractual obligation to not disclose Uni-System's proprietary information.  *City of Quincy v. Womack*, 60 So. 3d 1076, 1077 (Fla. Dist. Ct. App. 2011) (affirming trial court's rejection of a party's statute of limitations defense where the party "calculat[ed] [the] time from its initial breach of a continuing obligation under the contract, and the [party's] continuing subsequent breaches provided subsequent dates from which the limitations time

[could] be calculated . . . ."). Plaintiff alleges that
Hardesty & Hanover violated the terms of the Confidentiality
Agreement by, "[1] disclosing or revealing Proprietary
Information without Uni-Systems' prior written authorization;
[2] failing to redeliver and destroy Proprietary Information;
and/or [3] using Proprietary Information furnished by Uni-
Systems pursuant to the Confidentiality Agreement for the
Florida Marlins Ballpark peer review in connection with other
stadium retractable roof projects, including the Ashe
Retractable Roof and the Armstrong Retractable Roof." (FAC ¶
220.) Damages, therefore, could not accrue with respect to
Hardesty & Hanover's wrongful disclosure in connection with the
Ashe Retractable Roof and the Armstrong Retractable Roof
projects until the disclosures in connection with the projects
took place.

Plaintiff alleges it first discovered the disclosure
in connection with the Ashe Retractable Roof in the summer of
2015. (*See* FAC ¶ 82.) Plaintiff also alleges that Uni-Systems
discovered USTA's plans to construct the Armstrong Retractable
Roof in 2016 when Hunt and USTA issued a request for a proposal
relating to the planned Armstrong Retractable Roof that included
drawings that allegedly depicted a design that would infringe
the Lateral Release Patent if constructed. (*See* FAC ¶¶ 98, 99.)
As nothing on the face of the Amended Complaint indicates that

Uni-Systems suffered damages prior to the disclosures in connection with the Ashe Retractable Roof and Armstrong Retractable Roof, plaintiff's claim is timely on its face and dismissal is not warranted. *ABB Turbo Sys. AG*, 774 F.3d at 985.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend the Complaint is granted with additional facts to be added if consistent with Rule 11, and Defendants' motions to dismiss the Amended Complaint are granted in part and denied in part. Plaintiff shall file the Amended Complaint no later than October 11, 2018.

**SO ORDERED.**

Dated: Brooklyn, New York
       October 4, 2018

                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York

.