UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
UNI-SYSTEMS, LLC.,

                Plaintiff,　　　　　　　**ORDER**
　　　　　　　　　　　　　　　　　　　　　17 CV 147 (KAM) (CLP)
    -against-

UNITED STATES TENNIS
ASSOCIATION, INC., ROSSETTI INC.,
HUNT CONSTRUCTION GROUP, INC.,
HARDESTY & HANOVER, LLC,
HARDESTY & HANOVER, LLP,
MORGAN ENGINEERING SYSTEMS,
INC., and GEIGER ENGINEERS, P.C.,

                Defendants.

---------------------------------------------------------- x

**POLLAK**, United States Magistrate Judge:

    On April 2, 2018, plaintiff Uni-Systems, LLC filed a motion seeking an order requiring defendants Hardesty & Hanover, LLC and Hardesty & Hanover LLP together "Hardesty," Hunt Construction Group, Inc. "Hunt," and Morgan Engineering Systems, Inc. "Morgan Engineering" to supplement certain discovery responses. On April 4, 2018, plaintiff filed a separate motion to seal papers filed in connection with the motion, and on April 9, 2018, defendant Hardesty and defendant Morgan Engineering each filed a separate motion to file papers under seal.

    On October 5, 2018, the plaintiff filed an Amended Complaint, raising new claims relating to the Louis Armstrong Stadium and the Florida Marlins Stadium. Following the district court's October 5, 2018 decision on the defendants' motions to dismiss the Complaint, this Court directed the parties to meet and confer and provide a joint letter indicating which of the many outstanding discovery disputes remained to be decided in light of the narrowing of the claims.

(See 10/10/18 Minute Entry).[1] On November 2, 2018, the parties submitted separate letters detailing what each believed was at issue. (See Defs.' 11/2/18 Ltr;[2] Pl.'s 11/2/18 Ltr.[3]). The parties were also directed to provide a joint proposal for a schedule to complete discovery in this matter. (See 10/10/18 Minute Entry). On October 22, 2018, the parties submitted a proposed schedule for certain deadlines and an indication as to where the parties were unable to agree. (See 10/22/18 Ltr.).[4] On November 8, 2018, defendant Morgan Engineering filed a motion for extension of time to file an answer to plaintiff's Amended Complaint. (Morgan 11/8/18 Mot.).[5]

Each of the issues raised in these various letters, including the requests to seal certain documents, are addressed below.

## DISCUSSION

### I. Plaintiff's Discovery Disputes

#### A. Hardesty and Hunt's Responses to Uni-Systems' Interrogatories

Plaintiff contends that Hardesty and Hunt – the "Trade Secret defendants" – have failed to adequately respond to plaintiff's Interrogatory Nos. 2 and 3. (Pl.'s 4/2/18 Ltr.[6] at 2-3). According to plaintiff, Interrogatory No. 2 seeks information about the "development of drive, position, speed, and skew controls in the Arthur Ashe Stadium Roof (the 'Roof'), including how the controls work when the panels of the Roof are in operation and when they are at rest, as well as the people involved in their design and development and documents relating thereto. (Id. at 2). Interrogatory No. 3 seeks information relating to the development of cable drum drives, roof

---

[1] Citations to "10/10/18 Minute Entry" refer to the Minute Entry dated October 10, 2018.
[2] Citations to "Defs.' 11/2/18 Ltr." refer to defendants' letter, dated November 2, 2018 ECF No. 272.
[3] Citations to "Pl.'s 11/2/18 Ltr." refer to plaintiff's letter, dated November 2, 2018, ECF No. 273.
[4] Citations to "10/22/18 Ltr." refer to the parties' joint letter, dated October 22, 2018, ECF No. 271.
[5] Citations to "Morgan 11/8/18 Mot." refer to defendant Morgan's Motion, dated November 8, 2018, ECF No. 280.
[6] Citations to "Pl.'s 4/2/18 Ltr." refer to the plaintiff's letter motion, dated April 2, 2018, ECF No. 230.

load management, and the lateral release mechanism in the Roof, along with the identity of the people involved in their development, and documents relating to the design and development. (Id. at 3).

Plaintiff complains that defendants have filed meritless objections to the interrogatories, including that "Uni-Systems 'has no trade secrets,'" and that the interrogatories "request 'information pertaining to causes of action that may be dismissed.'" (Id.) Plaintiff also notes that instead of providing responsive information, both defendants Hardesty and Hunt failed to provide any information as to how the controls work, how they were designed and developed, and who was involved, responding instead that the software was developed by Morgan Engineering. (Id. at 2). Although defendants suggested that further information could be obtained by an inspection of the Roof, plaintiff questions whether such an inspection would sufficiently enable it to get close enough to observe the relevant assemblies and controls. (Id.) Plaintiff further argues that this would not provide the defendants' "understanding" as to how the systems work. (Id.) Plaintiff also complains that defendants have referred to general documents previously identified that do not answer the questions asked.

In response, Hardesty contends that the interrogatories do not request what plaintiff has suggested. (Hardesty 4/9/18 Ltr.[7] at 1). According to Hardesty, Interrogatory No. 2 asks Hardesty to "explain how each of the drive, position, speed, and skew controls work," and Interrogatory No. 3 asks Hardesty to "explain how each of the cable drum drives, the RMC, and the lateral release mechanism operate." (Id.) Hardesty explains that since each of the functions listed is controlled by software, Uni-Systems was referred to the detailed technical descriptions in the Roof Control System – Operational Specification (the "Operational Specification"), which

---

[7] Citations to "Hardesty 4/9/18 Ltr." refer to the responsive letter filed by defendant Hardesty, dated April 9, 2018, ECF No. 233.

explains how the software works to control the operation of these listed functions. (Id.)[8] To the extent that plaintiff is complaining that Hardesty referred to the same document in responding to both interrogatories, Hardesty claims that "it is legally irrelevant and unobjectionable that Hardesty referred to the same document, as the Operational Specification provides the information sought by Uni-Systems in its Interrogatories." (Id. at 2). Hardesty claims that it used the detailed explanation in the Operations Specification as the basis for its work on the stadium roof, and that these explanations describe how the systems are supposed to work and reflect Hardesty's understanding of the same. (Id.)

With respect to the identification of the people involved, Hardesty asserts that it adequately responded and identified its employees who were involved in the Operational Specification and in implementing the design of the control elements and systems. (Id.) Hardesty also explains that it had no involvement in the software to implement the functionality; that was up to Morgan Engineering. (Id.)

Hardesty has further indicated that, contrary to plaintiff's claim that Hardesty has not offered to allow Uni-Systems to inspect the Roof, plaintiff has not requested to see the Roof in action. (Id.) Finally, to the extent that plaintiff complains about Hardesty's objections to the interrogatories, Hardesty notes that it "has not withheld any information responsive to the Interrogatories on the basis of its objections." (Id. at 3).

Hunt has provided similar responses to plaintiff's motion. Hunt represents that it did not design or develop any of the control features or roof components listed in the interrogatories; Hunt's involvement was limited "to subcontracting the design work to others and coordinating

---

[8] Hardesty notes that one of the functions – the lateral release mechanism – is not a component of the Arthur Ashe Stadium, and with respect to the request for the operation of the Equalizer Assemblies, plaintiff did not complain that Hardesty's response was inadequate. (Id. at 2).

4

the work of the various subcontracted designers." (Hunt 4/9/18 Ltr. at 2). Hunt claims that despite its limited role, it identified the parties it understood to be involved in the design and development of the features at issue, as well as the Hunt employees who facilitated coordination. (Id.)

Hunt also notes that it complied with Rule 33(d) of the Federal Rules of Civil Procedure by referring Uni-Systems to the Operational Specification, along with other documents which contained detailed descriptions of how the features work. (Id.) In response to plaintiff's complaint that Hunt "sidesteps" the issue by noting that the software was developed by Morgan, Hunt responds that its role was simply to buy a system from Morgan that met the requirements issued by Geiger Engineers, P.C. (Id.)

In its most recent letter of November 2, 2018, Uni-Systems continues to pursue its motion for more complete responses to these requests, contending that "Uni-Systems must understand each Defendant's respective position regarding how the Ashe roof operates in order to then understand whether and how its trade secrets have been used by each Defendant." (Pl.'s 11/2/18 Ltr.[9] at 3). Plaintiff further contends that neither documents nor an inspection of the Roof will provide an "adequate response" as to "whether relevant assemblies and controls are observable, whether the roof can be observed opening and closing, or whether the controls and components may be disassembled for inspection and study." (Id.)

Apart from the fact that it is unclear why an inspection of the Roof will not answer the question of whether certain controls are "observable" or whether the Roof can be "observed" opening and closing, the two interrogatories at issue do not specifically ask these questions but simply ask for information about the "development of drive, position, speed, and skew controls

---

[9] Citations to "Pl.'s 11/2/18 Ltr." refers to the letter submitted by plaintiff's counsel on November 2, 2018, ECF No. 273.

5

in the Arthur Ashe Stadium Roof (the 'Roof'), including how these work" when the Roof is in operation and for information relating to the development of cable drum drives, roof load management, and the lateral release mechanism. As currently formulated, the Court finds that these two interrogatories are overly broad and too general to elicit the kind of information that plaintiff now claims it is seeking through these interrogatories. Although plaintiff has offered to reframe the interrogatories to more precisely describe what information is being sought, the Court cautions counsel that interrogatories may not be the best or most efficient way to obtain the type of information that plaintiff seems to be seeking. While the Court will allow plaintiff to submit revised interrogatories, there is a good chance that these will simply engender additional disputes, and the Court questions whether 30(b)(6) depositions or depositions of individuals for each defendant might not be a more efficient way to obtain the information being sought.

If plaintiff insists on serving new requests, they are to be served no later than December 4, 2018.

B. Additional Concerns Relating to Hunt's Production

In plaintiff's November 2, 2018 letter, plaintiff also complains that Hunt has produced certain emails which reference attachments but has failed to provide the attachments or the metadata associated with the attachments and the emails. (Pl.'s 11/2/18 Ltr. at 4). Defendant Hunt is Ordered to respond to plaintiff's request for attachments and metadata or to produce a privilege log by December 4, 2018.

In addition, plaintiff complains that Hunt has refused to produce communications between and among the defendants relating to the Florida Marlins stadium project, instead referring plaintiff's counsel to documents stored in Hunt's Phoenix warehouse. (Id. at 4).

Plaintiff's counsel complains that the documents, which they reviewed, are largely administrative and contain virtually no emails or communications relating to the mechanization of the Florida Marlins roof. (Id.)

Hunt responds that it asked Uni-Systems to provide a letter detailing what documents it requests relating to the Armstrong Stadium and that although it has not received any letter from Uni-Systems, it is reviewing its production to determine if there are any documents with which to supplement its response in light of the Court's October 10 Order. (Defs.' 11/2/18 Ltr. at 3-4). Hunt does not specifically mention the plaintiff's complaint about the absence of emails and communications relating to the mechanization of the Marlins roof.

Accordingly, the parties are Ordered meet and confer and agree on the scope of the discovery sought. Following the meet and confer, Hunt is Ordered to either supplement its production of documents relating to the Marlins and Armstrong Stadiums or indicate that it has searched for such documents and they have all been produced.

### C. Additional Concerns Relating to Hardesty & Hanover

Plaintiff also complains that Hardesty & Hanover has failed to provide discovery relating to its access to Uni-Systems' source code at the Arizona Cardinals stadium. (Pl.'s 11/2/18 Ltr. at 6). Plaintiff claims that during the deposition of the Cardinals stadium manager, plaintiff learned that Hardesty & Hanover made a copy of the source code without the manager's knowledge. (Id. at 7). Similarly, plaintiff seeks an Order requiring Hardesty & Hanover to produce discovery related to the Marlins stadium, claiming that defendant has refused "in bad faith" to respond. (Id.)

Hardesty & Hanover is Ordered to produce responses to plaintiff's discovery requests related to both the Cardinals and the Marlins stadiums by December 4, 2018. To the extent that defendant has lodged objections to the requests, defendant is Ordered to review the objections in light of the Amended Complaint and provide responses or an explanation as to why the documents still should not be produced. If the objection is based on burden, counsel shall be prepared to tell the Court exactly how many documents are at issue and why the burden outweighs the relevance of the information sought. Failure to search for the documents before lodging a burden objection will be grounds for sanctions.

D. Morgan Engineering's Response to Uni-Systems' Interrogatories

In its original April 2, 2018 letter, plaintiff raised issues with Morgan Engineering's response to plaintiff's interrogatories, noting that while Hardesty and Hunt refer to Morgan Engineering as having the responsive information, Morgan has failed to provide any of the requested information. (Pl.'s 4/2/18 Ltr. at 2). Plaintiff complained that Morgan produced over 33,400 pages of Source Code in paper format, making it effectively unreviewable. (Id.) In April, plaintiff requested an order requiring the parties to split the cost of producing the Source Code electronically on a laptop, that the laptop be located at Uni-System's counsel's office, and that Morgan provide information explaining how to operate the laptop so plaintiff can access the information. (Id.)

In its letter dated April 9, 2018, Morgan Engineering noted that although it listed objections to plaintiff's interrogatories, it did not withhold any documents based on those objections. (Morgan 4/9/18 Ltr.[10] at 2).

---

[10] Citations to "Morgan 4/9/18 Ltr." refers to the letter response of Morgan dated April 9, 2018.

8

In the most recent set of discovery letters, plaintiff continues to complain that it has repeatedly requested documents relating to Morgan's efforts to become the Roof mechanization subcontractor for the Marlins stadium. (Pl.'s 11/2/18 Ltr. at 5). According to plaintiff, Morgan has refused to produce those documents, claiming burden, and lack of relevance. (Id.) Morgan indicates that it does not possess any documents responsive to this request or if they do exist, the documents are on archive or backup tapes that the parties have agreed were not to be searched. (Defs.' 11/2/18 Ltr. at 6). By November 30, 2018, Morgan is Ordered to provide an affidavit from a records custodian indicating that documents responsive to this request have been searched for, with the exception of documents archived or on back-up tapes, and that none exist.

Also in the November 2, 2018 letter, plaintiff contends that Morgan Engineering has refused to participate in venue related discovery as ordered by the district court. (Pl.'s 11/2/18 Ltr. at 5). Plaintiff claims that it served "narrowly tailored" discovery requests on October 5, 2018, aimed at determining if venue was proper under the patent venue statute. (Id.) Plaintiff claims that Morgan produced only 15 pages of documents which failed to respond to the requests and raised objections not in compliance with the Federal Rules of Civil Procedure. (Id. at 6). Plaintiff claims that it attempted to arrange a meet and confer but Morgan's counsel refused to make itself available prior to the submission of the letter.

Counsel are Ordered to meet and confer and Morgan is directed to submit a letter by December 4, 2018, indicating the basis for any objections and/or an affidavit from a records custodian that it has searched for responsive documents and can only find 15.

As for the production of the Armstrong and Ashe Source Code, the plaintiff's recent letter asks the Court to order production of the codes electronically on a standalone computer within 7 days of the Court's Order. (Pl.'s 11/2/18 Ltr. at 7). Defendant Morgan insists that the

source code be produced in accordance with Uni-Systems' agreement in Item 7(c)(v) of the Protective Order, which requires that outside counsel or an outside consultant or expert of the Producing Party be present when the computer is accessed, "to ensure that there is no unauthorized recording, copying, or transmission of the Source Code Material." (Defs.' 11/2/18 Ltr. at 4). Apparently, this particular provision was heavily negotiated and ultimately agreed to by Uni-Systems, and then signed off by the Court. (Id. at 5).

Although plaintiff does not specifically address the agreement in the Protective Order, plaintiff objects to having an attorney from Morgan oversee the work product of plaintiff's counsel and its experts in reviewing the Source Code. Having already produced a hard copy of what is allegedly contained on the computerized version of the Source Code, it is unclear why Morgan feels it is necessary to go to such lengths to monitor plaintiff's review of the computerized version. Plaintiff notes that Morgan has already produced five hard copies of 30,000 pages of the Source Code. (Pl.'s 11/2/18 Ltr. at 8). Plaintiff argues that Morgan is less interested in protecting its trade secrets and more concerned with "thwarting Uni-Systems' discovery efforts." (Id.) Either Morgan recognized that the hard copies were virtually useless since there was no prior similar request to monitor plaintiff's counsel's review, or the current insistence on overseeing plaintiff's review is intended to hamper discovery by making it very difficult for plaintiff to conduct a review. Given that the parties have been fighting over the discovery of this Source Code for over seven months and cannot seem to agree on simple deadlines, the Court foresees additional delays and numerous disputes in the future over scheduling someone from Morgan to be present any time plaintiff's counsel or expert wishes to consult the Source Code.

Accordingly, since Morgan has failed to adequately explain why standard precautions to maintain the confidentiality of the Source Code, such as the ones in place in connection with the hard copy production, are not enough, and since the request to monitor every action by plaintiff's counsel or their experts is in clear conflict with the plaintiff's right to work product protection, the Court Orders as follows: 1) by December 4, 2018, Morgan shall produce the Source Code on a stand-alone computer, to be maintained in plaintiff's counsel's office at Norton Rose Fulbright; 2) no one other than plaintiff's counsel and staff, or experts retained by plaintiff's counsel, shall have access to the computer; 3) there will be maintained a log of all names, dates and times of access to the Source Code; and 4) no copies shall be made of the Source Code, nor shall any portions of the Code be transmitted to anyone. If the parties disagree with any of these provisions, they are free to work out different parameters, but if they cannot agree, the Court's Order governs; there will be no further disputes relating to the production of the Source Code.

II. Defendants' Discovery Disputes

In their letter dated November 2, 2018, defendants raise certain discovery issues of their own. Specifically, defendants seek an Order requiring Uni-Systems to serve its revised supplemental response to Interrogatory No. 1 defining the trade secrets at issue. (Defs.' 11/2/18 Ltr. at 6). In addition, defendants complain that Uni-Systems has refused to state what steps it has taken to search for documents relating to other retractable roof projects and to identify what remains to be produced. (Id.)

By December 4, 2018, plaintiff is Ordered to supplement its response to Interrogatory No. 1 and to provide an affidavit from a records custodian detailing the search conducted for

11

other roof projects, including the files and emails searched (and the method of email search), and indicate when additional documents will be produced.

III. Proposed Discovery Schedule

On October 10, 2018, this Court ordered counsel for all parties to meet and confer on a proposed schedule for the completion of discovery. (See 10/10/18 Minute Entry). Although the parties submitted a joint proposal on October 22, 2018, there were a number of areas in which they could not agree. Accordingly, the Court sets forth the following schedule, which has been adjusted to account for the Court's rulings above:

| | |
|---|---|
| Responses to Venue-related discovery: | December 4, 2018 |
| Completion of 30(b)(6) venue depositions | December 18, 2018 |
| Deadline to add parties and/or amend pleadings | December 28, 2018 |
| Close of Fact Discovery | To be determined at a later date |
| Opinion(s) of Counsel (Patent Rule 10) | 30 days after claim construction ruling, with right to extend |
| Opening expert reports | 60 days after close of fact discovery |
| Rebuttal expert reports | 45 days after opening reports |
| Reply expert reports | 30 days after rebuttal reports |
| Completion of expert depositions | 45 days after the filing of reply reports |
| Summary Judgment Motions | Parties are to comply with Judge Matsumoto's rules; schedule will be set by Court |
| Pre-trial Order | To be set by Court |

IV. <u>Motions to File Under Seal</u>

There are currently three motions to seal pending before this Court. On April 4, 2018, plaintiff filed a request for leave to file two exhibits to its April 4, 2018 letter under seal. (Pl.'s 4/4/18 Mot.).[11] Plaintiff seeks to file under seal a copy of Hardesty's objections to plaintiff's interrogatories and a letter from counsel for Morgan Engineering to counsel for Uni-Systems. Plaintiff seeks to file these documents under seal in accordance with the parties Protective Order "because Hardesty and Morgan have designated [the exhibits] as confidential." (Id. at 2). On April 9, 2018, Morgan Engineering filed a request for leave to file under seal the same letter from its counsel to counsel for Uni-Systems. (Morgan 4/9/18 Mot.).[12] Morgan argues that the document "contains information that is not publicly available and constitutes sensitive or proprietary technical, commercial, and/or competitive information that, if publicly disseminated, would lead to significant harm or injury to the reputation and/or business of Morgan and/or the other defendants in this action." (Id.)

On April 9, 2018, defendant Hardesty also filed a request for leave to file under seal the Operational Specification and the "Retractable Roof Mechanization Performance Criteria." (Hardesty 4/9/18 Mot.).[13] Plaintiff does not object to this motion.

This Court has previously observed that "although it is true that a protective order may provide guidance to the parties regarding what documents it might be appropriate to seal and how such documents should be presented to the Court, the decision to allow documents to be filed under seal in connection with motions and court proceedings is a wholly separate inquiry

---

[11] Citations to "Pl.'s 4/4/18 Mot." refer to plaintiff's Motion to File Under Seal, filed April 4, 2018, ECF No. 232.
[12] Citations to "Morgan 4/9/18 Mot." refer to defendant Morgan Engineering's Motion to File Under Seal, filed April 9, 2018, ECF No. 236.
[13] Citations to "Hardesty 4/9/18 Mot." refer to defendant Hardesty's Motion to File Under Seal, filed April 9, 2018, ECF No. 234.

governed by a different standard than whether to maintain documents disclosed in discovery in confidence." Johnson v. Federal Bureau of Prisons, No. 16 CV 3919, 2017 WL 5197143, at *3 (E.D.N.Y. Nov. 9, 2017). To determine whether it is appropriate to allow documents to be filed under seal, courts engage in a two-part inquiry.

First, the court decides how strong a presumption of access a document deserves with reference to its role in the judicial process. Next, the court will "balance the weight of that presumption, if any, with competing interests, namely, the private interests and concerns of judicial efficiency and law enforcement, to determine whether or not to seal a document." Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. 504, 506 (E.D.N.Y. 1999).

A "judicial document" is one that is presented to the Court and "relevant to the performance of the judicial function and useful in the judicial process." United States v. Amodeo ("Amodeo I"), 44 F.3d 141, 145 (2d Cir. 1995). Such documents are presumptively subject to public inspection and thus not properly sealed. See id. at 146. The presumption of access that attends judicial documents stems both from the common law tradition and from the Constitution: "[a]s the exercise of Article III [judicial] powers is a formal act of government, it should be subject to public scrutiny absent exceptional circumstances." Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. at 505.

In contrast to judicial documents, "[d]ocuments that play no role in the performance of Article III functions . . . lie entirely beyond the presumption's reach . . . and stand on a different footing than a motion filed by a party seeking action by the court or . . . any other document which is presented to the court to invoke its powers or affect its decisions." United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1050 (2d Cir. 1995) (emphasis added) (citations and quotation marks omitted).

The Court has reviewed the exhibits requested to be filed under seal by Uni-Systems and Hardesty and has determined that good cause to file them under seal is lacking. The exhibits were presented to the Court in connection with parties' discovery motions that resulted in this Court's discovery Order. The documents are therefore subject to the presumption of public access. The Court is unable to discern any interests that would defeat the public's presumptive right of access.

The Court therefore denies plaintiff's motion to file under seal document number 232; defendant Morgan Engineering's motion to file under seal document number 236 is also denied. To the extent the parties believe that the second full paragraph on page 11 of Exhibit C to document number 232, which contains some description of design criteria, is a trade secret, such information may be redacted before being filed on the public docket. Additionally, to the extent the parties believe the breakdown of the expense for production of the electronic source code, located on page one of Exhibit L to document number 232 and page one of Exhibit T to document number 236, is a trade secret, this breakdown may also be redacted. The parties' counsel are directed to thereafter file the exhibits on the public docket.

In contrast, the Court has reviewed the exhibits that Hardesty seeks to file under seal, which Hardesty argues "contain sensitive or proprietary technical" information. The Court agrees and grants Hardesty's motion to file under seal.

V.  Morgan's Motion for Extension of Time to File Answer

On November 8, 2018, defendant Morgan Engineering filed a Stipulation between Morgan and plaintiff wherein the parties agreed to cooperate to complete venue-related discovery and to stay Morgan's deadline to file an answer to the Amended Complaint pending

completion of venue discovery. (11/8/18 Morgan Mot.). The Stipulation was filed for the Court's endorsement and the Court endorses this request and hereby stays any deadlines for Morgan's response to the Amended Complaint while venue discovery is ongoing.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
November 27, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York